## ADJUSTABLE RATE NOTE
### (12-MTA Index - Payment and Rate Caps)

3013482520

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __115%__ OF THE ORIGINAL AMOUNT (OR $____1,104,000.00__). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

__MARCH 26, 2007__          __FALL RIVER__          , __MASSACHUSETTS__
                              CITY                       STATE

__65 HERITAGE LANE, DUXBURY, MA  02332__
                     PROPERTY ADDRESS

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ _____960,000.00_____ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is __WASHINGTON MUTUAL BANK, FA__ . I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2. INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid. Up until the first day of the calendar month that immediately precedes the first payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of __7.901__%. Thereafter until the first Change Date (as defined in Section 4 of this Note) I will pay interest at a yearly rate of __1.250__%. The interest rate required by this Section 2 and Section 4 of this Note is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month. In this Note, "payments" refer to Principal and interest payments only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I will make my monthly payments on __1ST__ day of each month beginning on __MAY, 2007__. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on __APRIL 01, 2037__, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at __P.O. BOX 78148 PHOENIX, AZ 85062-8148__, or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $ __3,199.22__, unless adjusted at an earlier time under Section 4(H) of this Note.

EXHIBIT

001  A

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the _____1ST_____ day of __MAY, 2007_____, and on that day every month thereafter. Each such day is called a "Change Date".

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding __TWO AND 95/100_____ percentage points __2.950__ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than __TEN AND 15/100_____ percentage points __10.150__ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing __MAY 01, 2008_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.

**(G) Changes In My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to ___115%___ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that ___115%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the ___FIFTH___ anniversary of the due date of the first monthly payment, and on that same day every ___FIFTH___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**Page 3 of 6**

003

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Miscellaneous Fees: I understand that the Note Holder will also charge a return item charge in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. The current fee is $ 15.00 . Lender reserves the right to change the fee from time to time without notice except as may be required by law.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000 % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once of each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given the Borrower).

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12. MISCELLANEOUS PROVISIONS**

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND (S) AND SEAL (S) OF THE UNDERSIGNED.

FRANCIS J SAMPSON JR.

Witness:
Wm. G. Kenney & Assoc., P.C.

By:

STEVEN M. DOWNEY
Notary Public
Commonwealth of Massachusetts
My Commission Expires
April 11, 2008

Pay to the order of

Without Recourse
WASHINGTON MUTUAL BANK, FA

By
CYNTHIA RILEY
VICE PRESIDENT

Page 6 of 6

WP1Y
M39

**Prepayment Fee Note Addendum**

This Note Addendum is made this 26TH day of MARCH, 2007 and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") in favor of WASHINGTON MUTUAL BANK, FA (the "Lender") and dated as of even date herewith (the "Note").

This Note Addendum amends the provision in the Note regarding the Borrower's right to prepay as follows:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the first anniversary of the date of the Note, the Prepayment Fee shall be equal to TWO percent ( 2.000 %) of the original loan amount. Thereafter, prepayment of the Note shall be permitted without any Prepayment Fee.

The Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

Page 1 of 2

007

**NOTICE TO THE BORROWER**
    Do not sign this Note Addendum before you read it. This Note Addendum provides for the payment of a Prepayment Fee if you wish to repay the loan prior to the date provided for repayment in the Note.

    By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.

FRANCIS J SAMPSON JR.

Page 2 of 2

Received & Recorded
PLYMOUTH COUNTY
REGISTRY OF DEEDS
30 MAR 2007  10:19AM
JOHN R. BUCKLEY, JR.
REGISTER
Bk 34311 Pg 304-325

Return To:

WASHINGTON MUTUAL BANK, FA
2210 ENTERPRISE DR
FLORENCE, SC 29501
DOC OPS M/S FSCE 440

Prepared By:
SORANGEL NUNEZ

ZMA1
M39

—————————— [Space Above This Line For Recording Data] ——————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  MARCH 26, 2007           ,
together with all Riders to this document.
(B) "Borrower" is  FRANCIS J SAMPSON JR.

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is  WASHINGTON MUTUAL BANK, FA

Lender is a  FEDERAL SAVINGS BANK
organized and existing under the laws of  THE UNITED STATES OF AMERICA

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022 1/01

VMP®-6(MA) (0401)

Page 1 of 15            Initials

VMP Mortgage Solutions (800)521-7291

EXHIBIT

B

009

Lender's address is 2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV 89014

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated MARCH 26, 2007

The Note states that Borrower owes Lender NINE HUNDRED SIXTY THOUSAND AND 00/100

Dollars

(U.S. $ 960,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 01, 2037

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Initials: [signature]

-6(MA) (0401)    Page 2 of 15    Form 3022 1/01

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the    COUNTY                [Type of Recording Jurisdiction]
of   PLYMOUTH                              [Name of Recording Jurisdiction]:

     THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE EXHIBIT AND IS MADE A PART HEREOF.

Parcel ID Number:                            which currently has the address of
85 HERITAGE LANE                                     [Street]
DUXBURY                 [City] , Massachusetts   02332      [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

     1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security

Initials:

—6(MA) (0401)                    Page 3 of 15                   Form 3022 1/01

Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.

Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in

Initials

013

a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and

014

restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or

Initials

with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for

VMP®–6(MA) (0401)                    Page 8 of 15        Initials: _____        Form 3022 1/01

Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair

Initials:

017

market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the

charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.

Initials: _____

If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum

Initials:

products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its

021

ZMA2

designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                                                    -Borrower

STEVEN M. DOWNEY
Notary Public
Commonwealth of Massachusetts
My Commission Expires
April 11, 2008

FRANCIS J SAMPSON JR.

_____ (Seal)
                                -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                                    -Borrower

**COMMONWEALTH OF MASSACHUSETTS,** PLYMOUTH County ss:

On this 26th day of March 2007 , before me, the undersigned notary public, personally appeared FRANCIS J SAMPSON JR.

, proved to me through satisfactory evidence of identification, which was/were a Drivers License , to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires:

(Seal)

Notary Public

STEVEN M. DOWNEY
Notary Public
Commonwealth of Massachusetts
My Commission Expires
April 11, 2008

—6(MA) (0401)                    Page 15 of 15          Initials:              Form 3022 1/01

023

# Exhibit A - Property Description

Borrower(s):        Francis J. Sampson, Jr.

Property            85 Heritage Lane, Duxbury, Massachusetts 02332
Address:

The land in Duxbury, Plymouth County, Massachusetts, on Heritage Lane (a way off the westerly side of Tremont Street) being shown as Lot 5 on a plan entitled, "Subdivision Plan of Land In Duxbury, Mass., Belonging to Catherine Realty Trust". dated June 20. 1969, by Delano & Keith. Inc.. recorded with Plymouth Registry of Deeds as Plan No. 209 of 1971, Plan Book 15, Page 964, reference to which plan is more particular description of said lot.

Being the same premises conveyed to this mortgagor by deed of Francis J. Sampson, Jr., Trustee of J and G Realty Trust dated May 23, 2003 recorded with the Plymouth County Registry of Deeds in Book 25297, Page 236.

024

## ADJUSTABLE RATE RIDER
### (12-MTA Index - Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this ___26TH___ day of ___MARCH, 2007_____, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to ___WASHINGTON MUTUAL BANK, FA_____ (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

___85 HERITAGE LANE, DUXBURY, MA 02332_____
### (PROPERTY ADDRESS)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN ___115%___ OF THE ORIGINAL AMOUNT (OR $___1,104,000.00_____). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND RIDER. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of ___7.961___ %. Thereafter until the first Change Date (as defined in Section 4 of the Note) I will pay interest at a yearly rate of ___1.250___ %. The interest rate I will pay will thereafter change in accordance with Section 4 of the Note.

32843 (11-01)                    **Page 1 of 6**                    LRD02USA (VERSION 1.0)

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the __1ST_____ day of __MAY, 2007_____, and on that day every month thereafter. Each such day is called a "Change Date".

### (B) The Index

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Interest Rate Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding __TWO AND 95/100_____ percentage points __2.950___% ("Margin") to Current Index. The Note Holder will then round the result of this addition to the nearest one thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). The difference will be rounded to the next higher 1/8 of 1%.

### (D) Interest Rate Limit

My interest rate will never be greater than __10.150___% ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

### (E) Payment Change Dates

Effective every year commencing __MAY 01, 2008_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the

amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

(F) **Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the Principal Payment and does not apply to any escrow payments Lender may require under the Security Instrument.

(G) **Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a Principal reduction of the Note.

(H) **Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to _115%_____ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that _115%_____ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

(I) **Required Full Monthly Payment**

On the _FIFTH_____ anniversary of the due date of the first monthly payment, and on that same day every _FIFTH_____ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

(J) **Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

RMT2

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid "Principal."

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

028

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

FRANCIS J SAMPSON JR.

32843 (11-01)                    **Page 6 of 6**                    LRD02USF (VERSION 1.0)



Bk: 38565Pg: 100 Page: 1 of 1
Recorded: 05/27/2010 11:47 AM

ATTEST: *John R Buckley Jr.*
REGISTER,
PLYMOUTH COUNTY REGISTRY OF DEEDS

## ASSIGNMENT OF MORTGAGE

JPMorgan Chase Bank, National Association, Successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank F.A., holder of a real estate mortgage

from Francis J. Sampson, Jr.

to Washington Mutual Bank F.A.

dated March 26, 2007

recorded in the Plymouth County Registry of Deeds in Book 34311, Page 304

assigns without recourse in any event said mortgage and the note and claim secured thereby to Bank of America, National Association as successor by merger to LaSalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 2007-OA4 Trust c/o JPMorgan Chase Bank, National Association, 7255 Baymeadows Way, Mailcode JAXA 2035, Jacksonville, FL 32556.

*IN WITNESS WHEREOF,* the said JPMorgan Chase Bank, National Association, Successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank F.A. has caused its corporate seal to be affixed and these presents to be signed in its name and behalf by **Margaret Dalton** its
**Vice President** _____ this _____ / 4 _____ day of
_____ May _____, A.D. 2010.

Signed and sealed in the presence
See Affidavit of FDIC for purchase
of assets of Washington Mutual
Bank filed in the Plymouth
County Registry District of the
Land Court as Document #642423

JP Morgan Chase Bank, National Association, Successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank, F.A.

By _____
Name: **Margaret Dalton**
Title: **Vice President**

STATE OF ____ **Florida** ____

____ **Duval** ____, S.S.    / 4   May ____, 2010
**Margaret Dalton**

Then personally appeared the above named _____
____ **Vice President** ____, and acknowledged the foregoing instrument to be the free act and deed of
JPMorgan Chase Bank, National Association, Successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank F.A., before me,

Notary Public: _____
My Commission Expires: _____    FLORIDA

Stanton & Davis
1000 Plain Street
Marshfield, MA 02050

E+D    2/23/2022
FLori

Property Address:   85 Heritage Lane, Duxbury, Massachusetts



EXHIBIT
C

031

2013 00046158

Bk: 43086 Pg: 192 Page: 1 of 1
Recorded: 05/20/2013 02:06 PM
ATTEST: John R. Buckley, Jr. Register
Plymouth County Registry of Deeds

## CONFIRMATORY ASSIGNMENT OF MORTGAGE

**JPMorgan Chase Bank, National Association, Successor in interest by purchase from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank F.A.,** holder of a real estate mortgage

from **Francis J. Sampson, Jr.**

to **Washington Mutual Bank F.A.**

dated **March 26, 2007**

recorded in the Plymouth County Registry of Deeds in Book **34311, Page 304**

assigns without recourse in any event said mortgage and the note and claim secured thereby to **U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, successor by merger to Lasalle Bank NA as trustee for WAMU Mortgage Pass-Through Certificates Series 2007-OA4 Trust** c/o JPMorgan Chase Bank, National Association, 7255 Baymeadows Way, Mailcode JAXA 2035, Jacksonville, FL 32556.

*IN WITNESS WHEREOF,* the said **JPMorgan Chase Bank, National Association, Successor in interest by purchase from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank F.A.** has caused its corporate seal to be affixed and these presents to be signed in its name and behalf by _____ Antonio Croom _____ its _____

_____**Vice President**_____ this ___ 25 ___ day of
_____ April _____, A.D. 2013.

Signed and sealed in the presence          **JPMorgan Chase Bank, National Association, Successor in interest by purchase from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank F.A.**

By _____
Name: _____ Antonio Croom _____
Title: _____ Vice President _____

STATE OF _____ **Ohio** _____

_____ Franklin _____, S.S.          April 25, 2013

Then personally appeared the above named _____ Antonio Croom _____,
_____ Vice President _____, and acknowledged the foregoing instrument to be the free act and deed of
**JPMorgan Chase Bank, National Association, Successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank F.A.,** before me,

Stephanie J. Tran
Notary Public: Stephanie T. Tran
My Commission Expires: 08-24-14

**\*\*This confirmatory assignment is being recorded to clarify the assignee name in the assignment dated May 14, 2010 recorded in Book 38565, Page 100 \*\***

Stanton & Davis
1000 Plain Street
Marshfield, MA 02050

Stephanie T. Tran
Notary Public, State of Ohio
My Commission Expires 08-24-14

**EXHIBIT D**

032

*Property Address:    85 Heritage Lane, Duxbury, Massachusetts*



USPS CERTIFIED MAIL

9214 8901 0764 3205 6408 74

FRANCIS J SAMPSON JR
85 HERITAGE LN
DUXBURY, MA 02332



EXHIBIT

E



033





FRANCIS J SAMPSON JR
85 HERITAGE LN
DUXBURY, MA 02332



035

036

- This is an important notice concerning your right to live in your home. Have it translated at once.
- Esta carta explica sus derechos legales para permanecer en su propiedad de vivienda. Por favor traduzca esta notificacion inmediatamente.
- Este é um aviso importante em relação ao seu dereito de morar na sua residência. Por favor, tem tradizido imediatamente.
- C'est une notification importante concernant votre droit de vivre chez vous. Faites-la traduire immédiatement.
- 这是一则关於您居住权的重要通知, 请儘快安排翻译。

**90-Day Right to Cure Your Mortgage Default**

October 16, 2018

BY FIRST-CLASS MAIL AND BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED

FRANCIS J SAMPSON JR
85 HERITAGE LN
DUXBURY, MA 02332

RE:    85 HERITAGE LN,  DUXBURY, MA 02332; loan ███████ with Select Portfolio Servicing, Inc. (SPS), as servicer for U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 (c/o SPS, PO Box 65250 Salt Lake City, UT 84165-0250) (Mortgagee); Mortgage Loan Originator: Washington Mutual Bank, FA;

To FRANCIS J SAMPSON JR:

We are contacting you because you did not make your monthly loan payment(s) due on 01/01/2010, 02/01/2010, 03/01/2010, 04/01/2010, 05/01/2010, 06/01/2010, 07/01/2010, 08/01/2010, 09/01/2010, 10/01/2010, 11/01/2010, 12/01/2010, 01/01/2011, 02/01/2011, 03/01/2011, 04/01/2011, 05/01/2011, 06/01/2011, 07/01/2011, 08/01/2011, 09/01/2011, 10/01/2011, 11/01/2011, 12/01/2011, 01/01/2012, 02/01/2012, 03/01/2012, 04/01/2012, 05/01/2012, 06/01/2012, 07/01/2012, 08/01/2012, 09/01/2012, 10/01/2012, 11/01/2012, 12/01/2012, 01/01/2013, 02/01/2013, 03/01/2013, 04/01/2013, 05/01/2013, 06/01/2013, 07/01/2013, 08/01/2013, 09/01/2013, 10/01/2013, 11/01/2013, 12/01/2013, 01/01/2014, 02/01/2014, 03/01/2014, 04/01/2014, 05/01/2014, 06/01/2014, 07/01/2014, 08/01/2014, 09/01/2014, 10/01/2014, 11/01/2014, 12/01/2014, 01/01/2015, 02/01/2015, 03/01/2015, 04/01/2015, 05/01/2015, 06/01/2015, 07/01/2015, 08/01/2015, 09/01/2015, 10/01/2015, 11/01/2015, 12/01/2015, 01/01/2016, 02/01/2016, 03/01/2016, 04/01/2016, 05/01/2016, 06/01/2016, 07/01/2016, 08/01/2016, 09/01/2016, 10/01/2016, 11/01/2016, 12/01/2016, 01/01/2017, 02/01/2017, 03/01/2017, 04/01/2017, 05/01/2017, 06/01/2017, 07/01/2017, 08/01/2017, 09/01/2017, 10/01/2017, 11/01/2017, 12/01/2017, 01/01/2018, 02/01/2018, 03/01/2018, 04/01/2018, 05/01/2018, 06/01/2018, 07/01/2018, 08/01/2018, 09/01/2018, 10/01/2018 to SPS. You must pay the past due amount of $570,659.94 on or before January 17, 2019, which is 90 days from the date of this notice. The past due amount on the date of this notice is specified below:

- $3,697.09 Principal & Interest due on 01/01/2010; $3,697.09 Principal & Interest due on 02/01/2010; $3,697.09 Principal & Interest due on 03/01/2010; $3,697.09 Principal & Interest due on 04/01/2010; $3,974.37 Principal & Interest due on 05/01/2010; $3,974.37 Principal & Interest due on 06/01/2010; $3,974.37 Principal & Interest due on 07/01/2010; $3,974.37 Principal & Interest due on 08/01/2010; $3,974.37 Principal & Interest due on 09/01/2010; $3,974.37 Principal & Interest due on 10/01/2010; $3,974.37 Principal & Interest due on 11/01/2010; $3,974.37 Principal & Interest due on 12/01/2010;



037

$3,974.37 Principal & Interest due on 01/01/2011; $3,974.37 Principal & Interest due on 02/01/2011;
$3,974.37 Principal & Interest due on 03/01/2011; $3,974.37 Principal & Interest due on 04/01/2011;
$4,272.44 Principal & Interest due on 05/01/2011; $4,272.44 Principal & Interest due on 06/01/2011;
$4,272.44 Principal & Interest due on 07/01/2011; $4,272.44 Principal & Interest due on 08/01/2011;
$4,272.44 Principal & Interest due on 09/01/2011; $4,272.44 Principal & Interest due on 10/01/2011;
$4,272.44 Principal & Interest due on 11/01/2011; $4,272.44 Principal & Interest due on 12/01/2011;

$4,272.44 Principal & Interest due on 01/01/2012; $4,272.44 Principal & Interest due on 02/01/2012;
$4,272.44 Principal & Interest due on 03/01/2012; $4,272.44 Principal & Interest due on 04/01/2012;
$4,656.96 Principal & Interest due on 05/01/2012; $4,656.96 Principal & Interest due on 06/01/2012;
$4,656.96 Principal & Interest due on 07/01/2012; $4,656.96 Principal & Interest due on 08/01/2012;
$4,656.96 Principal & Interest due on 09/01/2012; $4,656.96 Principal & Interest due on 10/01/2012;
$4,656.96 Principal & Interest due on 11/01/2012; $4,656.96 Principal & Interest due on 12/01/2012;

$4,656.96 Principal & Interest due on 01/01/2013; $4,656.96 Principal & Interest due on 02/01/2013;
$4,656.96 Principal & Interest due on 03/01/2013; $4,656.96 Principal & Interest due on 04/01/2013;
$4,653.88 Principal & Interest due on 05/01/2013; $4,653.88 Principal & Interest due on 06/01/2013;
$4,653.88 Principal & Interest due on 07/01/2013; $4,653.88 Principal & Interest due on 08/01/2013;
$4,653.88 Principal & Interest due on 09/01/2013; $4,653.88 Principal & Interest due on 10/01/2013;
$4,653.88 Principal & Interest due on 11/01/2013; $4,653.88 Principal & Interest due on 12/01/2013;

$4,653.88 Principal & Interest due on 01/01/2014; $4,653.88 Principal & Interest due on 02/01/2014;
$4,653.88 Principal & Interest due on 03/01/2014; $4,653.88 Principal & Interest due on 04/01/2014;
$4,628.12 Principal & Interest due on 05/01/2014; $4,628.12 Principal & Interest due on 06/01/2014;
$4,628.12 Principal & Interest due on 07/01/2014; $4,628.12 Principal & Interest due on 08/01/2014;
$4,628.12 Principal & Interest due on 09/01/2014; $4,628.12 Principal & Interest due on 10/01/2014;
$4,628.12 Principal & Interest due on 11/01/2014; $4,628.12 Principal & Interest due on 12/01/2014;

$4,628.12 Principal & Interest due on 01/01/2015; $4,628.12 Principal & Interest due on 02/01/2015;
$4,628.12 Principal & Interest due on 03/01/2015; $4,628.12 Principal & Interest due on 04/01/2015;
$4,625.56 Principal & Interest due on 05/01/2015; $4,625.56 Principal & Interest due on 06/01/2015;
$4,625.56 Principal & Interest due on 07/01/2015; $4,625.56 Principal & Interest due on 08/01/2015;
$4,625.56 Principal & Interest due on 09/01/2015; $4,625.56 Principal & Interest due on 10/01/2015;
$4,625.56 Principal & Interest due on 11/01/2015; $4,625.56 Principal & Interest due on 12/01/2015;

$4,625.56 Principal & Interest due on 01/01/2016; $4,625.56 Principal & Interest due on 02/01/2016;
$4,625.56 Principal & Interest due on 03/01/2016; $4,625.56 Principal & Interest due on 04/01/2016;
$4,718.27 Principal & Interest due on 05/01/2016; $4,718.27 Principal & Interest due on 06/01/2016;
$4,718.27 Principal & Interest due on 07/01/2016; $4,718.27 Principal & Interest due on 08/01/2016;
$4,718.27 Principal & Interest due on 09/01/2016; $4,718.27 Principal & Interest due on 10/01/2016;
$4,718.27 Principal & Interest due on 11/01/2016; $4,718.27 Principal & Interest due on 12/01/2016;

$4,718.27 Principal & Interest due on 01/01/2017; $4,718.27 Principal & Interest due on 02/01/2017;
$4,718.27 Principal & Interest due on 03/01/2017; $4,718.27 Principal & Interest due on 04/01/2017;
$4,851.88 Principal & Interest due on 05/01/2017; $4,851.88 Principal & Interest due on 06/01/2017;
$4,851.88 Principal & Interest due on 07/01/2017; $4,851.88 Principal & Interest due on 08/01/2017;
$4,851.88 Principal & Interest due on 09/01/2017; $4,851.88 Principal & Interest due on 10/01/2017;
$4,851.88 Principal & Interest due on 11/01/2017; $4,851.88 Principal & Interest due on 12/01/2017;

LR081 1535.V.2.1

$4,851.88 Principal & Interest due on 01/01/2018; $4,851.88 Principal & Interest due on 02/01/2018;
$4,851.88 Principal & Interest due on 03/01/2018; $4,851.88 Principal & Interest due on 04/01/2018;
$5,112.81 Principal & Interest due on 05/01/2018; $5,112.81 Principal & Interest due on 06/01/2018;
$5,112.81 Principal & Interest due on 07/01/2018; $5,112.81 Principal & Interest due on 08/01/2018;
$5,112.81 Principal & Interest due on 09/01/2018; $5,112.81 Principal & Interest due on 10/01/2018;

• $87,729.68 Outstanding Escrow Balance;

• $887.28 Late Charge due on 08/08/2013

If you pay the past due amount, and any additional monthly payments, late charges or fees that may become due between the date of this notice and the date when you make your payment, your account will be considered up-to-date and you can continue to make your regular monthly payments.

Make your payment directly to:

> Select Portfolio Servicing, Inc.
> Attn:  Cashiering Department
> PO Box 65450 Salt Lake City, UT 84165-0450

Please consider the following:

- You should contact the Homeownership Preservation Foundation (888-995-HOPE) to speak with counselors who can provide assistance and may be able to help you work with your lender to avoid foreclosure;

- If you are a MassHousing borrower, you may also contact MassHousing (617-854-1000) to determine if you are eligible for additional assistance. There may be other homeownership assistance available through your lender or servicer;

- You may also contact the Division of Banks (617-956-1500) or visit www.mass.gov/foreclosures to find a foreclosure prevention program near you;

- After January 17, 2019, you can still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place.  Depending on the terms of the loan, there may also be other ways to avoid foreclosure, such as selling your property, refinancing your loan, or voluntarily transferring ownership of the property to U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4.

**If you do not pay the total past due amount of $570,659.94 and any additional payments that may become due by January 17, 2019, you may be evicted from your home after a foreclosure sale.  If U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 forecloses on this property, it means the mortgagee or a new buyer will take over the ownership of your home.**

If you have questions, or disagree with the calculation of your past due balance, please contact SPS at 800-635-9698 or PO Box 65277 Salt Lake City, UT 84165-0277.

Sincerely,

Lindsey Clissold
Vice President, Quality Control Department
Select Portfolio Servicing, Inc.

Enclosed with this notice, there may be additional important disclosures related to applicable laws and requirements that you should carefully review.

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

LR081 1535.V.2.1



October 16, 2018


FRANCIS J SAMPSON JR
85 HERITAGE LN
DUXBURY, MA 02332



**Account Number:** ███████████
**Property Address:**     85 HERITAGE LN
                          DUXBURY, MA 02332

Dear Customer(s):

This letter provides additional information about your mortgage loan default and is intended to complement the enclosed "90 Day Right to Cure Your Mortgage Default" (the "90 Day Notice"). In the event of any conflict between the terms of this letter and those contained in the 90 Day Notice, the terms of the 90 Day Notice will control.

As noted in the 90 Day Notice, the mortgage on your property is in default as a result of your failure to make payments as required by the Note and Deed of Trust or Mortgage (Security Instrument). Select Portfolio Servicing, Inc. (SPS) services your mortgage loan and has been instructed on behalf of the holder of the promissory note to pursue remedies under the Security Instrument unless you take action to cure the default as detailed in the 90 Day Notice.

**Possible Consequences of Default**
If we do not receive the past due amount by the date listed in the 90 Day Notice, or some loss mitigation alternative to foreclosure has not started, SPS may initiate foreclosure and require immediate payment in full of the entire outstanding unpaid amount on the account. In other words, failure to cure the default on or before January 17, 2019 may result in acceleration of sums secured by the Security Instrument and sale of the Property. If that happens, you may lose your home. A foreclosure will result in the involuntary loss of the property via sale to the lender, or another person may acquire the property by means of foreclosure and sale, and you may be evicted. Once foreclosure is initiated, additional amounts for legal fees and costs may be incurred.  These sums can be significant. They may be added to amounts secured by the Security Instrument, and they may be required to be paid, to the extent permitted by law, if you wish to reinstate or satisfy the loan after foreclosure is initiated.

**Payment Options**
Please provide payments to the following address:

Sent via US Mail to:                        Sent via overnight courier to:
**Select Portfolio Servicing, Inc.**        **Select Portfolio Servicing, Inc.**
**PO Box 65450 Salt Lake City, UT 84165-0450**  **Attn: Remittance Processing**
                                            **3217 S. Decker Lake Dr., Salt Lake City, UT 84119**

Payments may be submitted in the following forms:

   (a) Personal check
   (b) Money order
   (c) Bank wire (electronic funds transfer). Please contact SPS for the information necessary to complete a bank wire.
   (d) Certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency.
   (e) Western Union Quick Collect. Reference the loan number above and deliver to Code City: Oswald, Code State: UT.



041

In some circumstances, you may be able to submit a payment through EZ Pay by calling 800-258-8602 or visiting our website at www.spservicing.com. Please remember that EZ Pay payments clear quickly, and you must have the funds in your checking account on the day you ask us to process a payment. We will obtain your consent prior to initiating payment and will advise you of any fee for this service, which may be up to $15.00.

SPS requires that you pay reinstatement amounts in certified funds. Certified funds include a bank wire, cashier's bank check, attorney trust account check, title or escrow company check, or Western Union Quick Collect. Please contact SPS at 800-635-9698 for instructions on submitting these funds.

**<u>You Have Options to Avoid Foreclosure!</u>**
SPS is committed to home retention and offers many customer assistance programs designed to help customers avoid foreclosure. These programs are offered at no cost to our customers and are designed to help preserve home ownership or prevent foreclosure through structured repayment plans, special payment arrangements, modifications, short settlements, and deed-in-lieu options, if you are eligible. If you would like to learn more about these programs, you should immediately contact an SPS representative at our toll-free number, 800-635-9698, or visit our website at www.spservicing.com. Our representatives are available by phone Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

If you have any questions, your assigned Relationship Manager, Barbara Emery, can be reached toll free at 888-818-6032 Ext. 36471 or by email at Relationship.Manager@SPServicing.com.

**If we can reach an agreement to resolve your default, we will not proceed with and/or commence foreclosure, as long as you comply with the agreement and make required payments.**

**Servicemembers Civil Relief Act (SCRA)**
SPS is committed to home ownership assistance for active servicemembers and veterans of the United States military. You may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. 3901 et seq.) regarding your interest rate and the risk of foreclosure if you are a servicemember or a dependent of a servicemember. Counseling for covered servicemembers is available at agencies such as Military OneSource (800-342-9647 or www.militaryonesource.mil) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil). Note: your state may have more expansive eligibility criteria than below. Please contact us as soon as possible if you have any questions or believe you may be eligible.

Eligible service may include, but is not limited to:

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard), or
- Reserve and National Guard personnel who have been activated and are on Federal active duty, or
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds, or
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, or
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

Please send written notice of military service as soon as possible to:

Select Portfolio Servicing, Inc.
PO Box 65250 Salt Lake City, UT 84165-0250

If you have questions regarding eligibility and application requirements, please call us at 800-258-8602.

LR081 1535.V.2.1

**Your Rights**

If you wish to dispute your delinquency or the correctness of the past due amount listed in the 90 Day Notice, you may do so by providing a written dispute to SPS at the following address:

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

You may call SPS at our toll free number 800-258-8602 to discuss your dispute. However, to protect your rights under federal law, you will need to provide written notice to SPS if you believe that your dispute is unresolved.

You have the right to reinstate after acceleration of your loan and commencement of foreclosure proceedings. If you reinstate, the Security Instrument shall remain fully effective as if no acceleration had occurred.

You have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.

A review of the HUD-1 specifies that Washington Mutual Bank, FA was listed as your mortgage broker/originator for this mortgage. We are supplying this information as required by the Commonwealth of Massachusetts.

**Counseling**

HUD approved home ownership counseling may be available to you. You should call (800) 569-4287 or TDD (800) 877-8339, or go to HUD's website at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm to find the HUD-approved housing counseling agency nearest you. You may be eligible for assistance from the Homeownership Preservation Foundation, which may be reached at the Homeowner's HOPE™ Hotline at 888-995-HOPE™ (888-995-4673) or at their website, www.995hope.org, or you make seek help from another non-profit foreclosure avoidance agency.

Financial assistance may be available to you from programs operated by the State or Federal Government. Below is a list of Government agencies that you may wish to contact or ascertain whether you qualify for assistance.

| | |
|---|---|
| **Massachusetts Division of Banks** | (617) 956-1500 |
| **Massachusetts Housing Finance Agency** | (617) 854-1000, (413) 733-0999 or (800) 439-2370 |
| | www.masshousing.com |
| | |
| **HUD Approved Housing Counseling** | (800) 569-4287 |
| | https://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm |
| | |
| **Veterans Administration** | (800) 827-1000 |
| **HOPE Hotline** | (888) 995-HOPE (4673) |

You have options to avoid foreclosure. THE TIME TO ACT IS NOW. Please call us at 800-635-9698.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**



LR081 1535.V.2.1

- This is an important notice concerning your right to live in your home. Have it translated at once.

- Esta carta explica sus derechos legales para permanecer en su propiedad de vivienda. Por favor traduzca esta notificacion inmediatamente.

- Este é um aviso importante em relação ao seu direito de morar na sua residência. Por favor, tem tradizido imediatamente.

- C'est une notification importante concernant votre droit de vivre chez vous. Faites-la traduire immédiatement.

- 这是一则关於您居住权的重要通知, 请儘快安排翻译。

## RIGHT TO REQUEST A MODIFIED MORTGAGE LOAN

October 16, 2018

BY FIRST-CLASS MAIL AND BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED

FRANCIS J SAMPSON JR
85 HERITAGE LN
DUXBURY, MA 02332

RE:   85 HERITAGE LN,  DUXBURY, MA 02332; loan ███████ with Select Portfolio Servicing, Inc. (SPS), as servicer for U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 (c/o SPS, PO Box 65250 Salt Lake City, UT 84165-0250) (Mortgagee); Mortgage Loan Originator: Washington Mutual Bank, FA.

To FRANCIS J SAMPSON JR:

We are contacting you because our records indicate you are eligible to request a modification of your mortgage with SPS. If you want to request a loan modification or other foreclosure alternative option, you must complete and return the enclosed Mortgage Modification Options form along with any supporting information no later than November 15, 2018. The Mortgage Modification Options form and any supporting documents must be returned by certified mail or similar service to SPS. We will respond to your request within 30 days of its receipt.

Please be aware this notice of Right to Request a Modified Mortgage Loan is different from the Right to Cure Your Mortgage Default notice that you may have already received. *The enclosed Mortgage Modification Options form provides you with four choices. These choices impact the options under the Right to Cure notice and should be carefully considered.* If you do not want to request a loan modification, you must still return the enclosed Mortgage Modification Options form. Please keep a copy of everything you send to us and keep proof of mailing the materials to us.

**If you do not return the enclosed Mortgage Modification Options form and a completed loan modification application by November 15, 2018 your right to cure your mortgage default will end on January 17, 2019.**

If you have questions, please contact SPS at 888-818-6032 or PO Box 65250 Salt Lake City, UT 84165-0250. If you would like assistance from the Attorney General's Office, you may contact the HomeCorps hotline at 617-573-5333 to speak with a loan modification specialist who can assist you.

We suggest you mention this notice when you call.

Sincerely,

Lindsey Clissold
Vice President, Quality Control Department
Select Portfolio Servicing, Inc.

Enclosed with this notice, there may be additional important disclosures related to applicable laws and requirements that you should carefully review.

Enclosures:

- Mortgage Modification Options Form
- Request for Mortgage Assistance Form
- IRS Form 4506-T

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

**Minnesota - This collection agency is licensed by the Minnesota Department of Commerce New York City - Collection Agency License # 1170514**

LR081 1535.V.2.1

## MORTGAGE MODIFICATION OPTIONS

You must return this form in the enclosed envelope by November 15, 2018

**FRANCIS J SAMPSON JR**
**85 HERITAGE LN**
**DUXBURY, MA 02332**

RE:    85 HERITAGE LN,  DUXBURY, MA 02332; loan ███████ with Select Portfolio Servicing, Inc. (SPS).

To FRANCIS J SAMPSON JR:

You must check one of the following boxes to notify SPS of how you would like to proceed.

☐  I would like to request a loan modification. I have attached a complete statement of my income and list of assets, total debts and obligations as requested by the creditor in the form(s) which accompanied the Right to Request a Modified Loan Notice. I maintain my right to a 90 day period to cure my mortgage default.

☐  I would like to request a different foreclosure alternative such as a short sale or deed-in lieu of foreclosure. I maintain my right to a 90 day period to cure my mortgage default.

☐  I do not want to request a loan modification or any foreclosure alternative. I maintain my right to a 90 day period to cure my mortgage default.

☐  I want to waive my right to cure the default on my mortgage loan and proceed to foreclosure. I understand that by choosing this option I waive the remaining time, if any, of my right to the 90 day cure period.

_____          _____
Borrower Name                                                          Date

_____
Borrower Telephone



047

LR081 1535.V.2.1



## REQUIRED INFORMATION NOTICE

Dear Customer(s):

Select Portfolio Servicing, Inc. (SPS) offers assistance options designed for customers who are experiencing temporary or permanent hardship and we look to forward to working with you.

In order for us to review your request for assistance, you must first submit a complete loss mitigation application. This letter describes the Required Information you are required to submit to us in connection with a complete application for available loss mitigation options.  We have many assistance options designed for customers who are experiencing temporary or permanent hardships.  These options are offered at no cost to our customers and may include structured repayment plans, modifications, or account settlement alternatives, such as short sales or deeds in lieu of foreclosure. If your property also secures other accounts, you should consider contacting the servicer(s) of those accounts to discuss available loss mitigation options.

Please contact SPS immediately if you have any questions. Once we have received all Required Information, you will receive an acknowledgement from SPS that we have a complete application and can begin our review. If you have recently provided documents, they will be included as part of our review.

**If there is a foreclosure sale scheduled for your home in the next thirty (30) days you are required to send all documentation via overnight mail with delivery confirmation.** Please know that while we are evaluating your complete application, your account will not be referred to foreclosure nor will it be sold at a foreclosure sale if the foreclosure process has already been initiated. If a foreclosure sale has already been scheduled we will instruct our attorney to file a motion (or other similar action) to postpone such sale. It is possible however that a court will deny the motion and the sale will proceed. If that happens we will be unable to provide loss mitigation. If you are unsure if there is a sale scheduled for the property in the next thirty (30) days please contact us immediately at 888-818-6032. All documents sent via overnight mail must be addressed to:

**Select Portfolio Servicing, Inc.**
**3217 S. Decker Lake Dr., Salt Lake City, UT 84119**

As noted above, in order for us to review your account for all available loss mitigation programs we require a complete application, which requires you to submit all Required Information. The Required Information are described below. To aid in identifying your documents, should they be sent separately or get separated, please include your account number on the bottom of all pages. You may fax, email, or mail the Required Information to:

**Select Portfolio Servicing, Inc.**
**PO Box 65200 Salt Lake City, UT 84165-0250**
**Fax: 866-867-3019**
**Email: Relationship.Manager@SPServicing.com**
**Website:  www.spservicing.com**

Keep in mind that, in general, documentation must be dated within the last ninety (90) days to be considered valid. Once we have received your complete application and any necessary third party approvals, you will be evaluated for all loss mitigation options available to you and the results will be sent to you within thirty (30) days after we receive your complete application. This notification will provide, as applicable:

- Details of the loss mitigation program for which you are approved, including, any information on how and when you must accept the offer, which at a minimum will be 14 days.
- Names of all loss mitigation programs for which you were evaluated but not approved, including, the results of any Net Present Value (NPV) tests if applicable.
- Information on how to appeal the denial of a modification plan if applicable.



049

**This is an important notice to provide the Required Information. Time is of the essence!**

Please know that you are entitled to a copy of the property valuation report we may order in connection with any applicable account modification review. We will send the valuation report to you upon completion of the valuation.

**Notice of Error or Information Request**

If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All Notices of Error or Information Requests must be sent in writing to the address listed below, as this is our exclusive address under Federal law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal law.

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

At SPS, any of our trained servicing representatives can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact our Loan Resolution Department. Our toll-free number is 888-818-6032, and representatives are available Monday through Thursday between the hours of Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

If you would like to speak with a HUD approved counselor, call the Homeowner's HOPE™ Hotline 888-995-HOPE (4673). The Homeowner's HOPE™ Hotline offers free HUD-certified counseling services and is available 24/7 in English and Spanish. Other languages are available by appointment.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

### Required Information

| | |
|---|---|
| RMA/Hardship Affidavit | A completed Request For Mortgage Assistance signed by all customers. This form, or an attached letter, must contain a detailed explanation of the hardship, including information on when the hardship began. A copy of this document is enclosed with this letter or it can be obtained from our website at www.spservicing.com or by calling 888-818-6032. |
| Profit and Loss Statement | **For each customer who is self-employed:**<br>• Each self-employed borrower customer must provide copies of each of the most recent quarterly or year-to-date profit and loss statement, covering at least a three (3) month period, for each business owned. The statement must include the business name, income, cost of goods sold, other income, expenses, net income after expenses and period start and end dates (for example 10/1/2012 through 12/31/2012). The statement must be signed and dated by the customer. If you are no longer self-employed, please provide a copy of your cancelled business license or letter of explanation.<br>• K-1 / Tax Form 1120S or 1065B – A copy of the shareholder's share of income for self-employment income listed on Schedule E of your recent tax returns for verification of percentage of ownership. |

| Rental Income | **For each customer who has rental income:**<br>• Copies of the 2 (two) most recent payments evidencing receipt of income, such as a bank statement or canceled check, and<br>• The current lease agreement for all rental properties, and<br>• Copies of the most recent years filed federal tax returns with all schedules, including Schedule E – Supplemental Income and Loss. Rental income for qualifying purposes will be 75% of the gross rent minus any mortgage-related expenses for the property. |
|---|---|
| Social Security Benefits | **For each customer with social security income:**<br>• A monthly statement or document from the government to verify all of the social security income of each customer. All documents must be less than 90 days old at the time of submission, and<br>• A copy of the two (2) most recent bank statement(s), including all pages, or copies of the two most recent benefit checks evidencing receipt of income. |
| Retirement Income | **For each customer with retirement income:**<br>• A monthly statement or document from the provider to verify all of the retirement income of each customer. All documents must be less than 90 days old at the time of submission, and<br>• A copy of the two (2) most recent bank statement(s), including all pages, or copies of the two most recent checks evidencing receipt of retirement income. |
| Insurance Benefit Income | **For each customer with insurance benefit income:**<br>• A monthly statement or document from the provider to verify all of the benefit income of each customer. All documents must be less than 90 days old at the time of submission, and<br>• A copy of the two (2) most recent bank statement(s), including all pages, or copies of the two most recent benefit checks evidencing receipt of insurance benefit income. |
| Disability Income | **For each customer with disability income:**<br>• A monthly statement or document from the government or provider to verify all of the disability income of each customer. All documents must be less than 90 days old at the time of submission, and<br>• A copy of the two (2) most recent bank statement(s), including all pages, or copies of the two most recent checks evidencing receipt of disability income. |
| Pension Income | **For each customer with pension income:**<br>• A monthly statement or document from the pension provider to verify all of the pension income of each customer. All documents must be less than 90 days old at the time of submission, and<br>• A copy of the two (2) most recent bank statement(s), including all pages, or copies of the two most recent checks evidencing receipt of pension income. |
| Public Assistance  Income | **For each customer with public assistance:**<br>• Copy of benefit statement or award letter for each income source or letter from the provider that states the amount, frequency, and duration of the benefit. Public assistance must continue for at least nine (9) months to be considered qualifying income<br>• Your two (2) most recent monthly bank statements or copies of the two most recent benefit checks or two most recent monthly online statements for public assistance EBT card recipients. |
| Unemployment Income | **For each customer with unemployment income:**<br>• Copy of benefit statement or letter from the provider that states the amount, frequency, and duration of the benefit. Unemployment benefits must continue for at least nine (9) months to be considered qualifying income.<br>• Your two (2) most recent monthly bank statements or copies of the two most recent benefit checks. |



051

| | |
|---|---|
| Alimony | **For each customer who is relying on alimony (Please note: you do not need to provide this information if you do not want us to consider it in our review):**<br>• Copy of divorce decree, separation agreement or other written agreement or decree that states the amount of alimony and period of time over which it will be received. Payments must continue for at least three (3) years to be considered qualifying income under this program; and<br>• Evidence of, regular, and timely payments for at least two (2) months; for example deposit slips, copies of bank statements, court verification. All documents must be less than 90 days old at the time of submission. The most recent years filed federal tax return, with all schedules, evidencing receipt of the income is also acceptable. |
| Child Support | **For each customer who is relying on child support (Please note: you do not need to provide this information if you do not want us to consider it in our review):**<br>• Copy of divorce decree, separation agreement or other written agreement or decree that states the amount of support and period of time over which it will be received. Payments must continue for at least three (3) years to be considered qualifying income under this program; and<br>• Evidence of, regular, and timely payments for at least two (2) months; for example deposit slips, copies of bank statements, court verification. All documents must be less than 90 days old at the time of submission. The most recent years filed federal tax return, with all schedules, evidencing receipt of the income is also acceptable. |
| Bank Statements | **For each customer who has checking and savings accounts:**<br>• A copy of the three (3) most recent statement(s) for all accounts, including all pages.<br>**For customer who owns publicly traded securities or other investments:**<br>• A copy of the most recent quarterly or a minimum of three (3) months consecutive statements for each publicly traded securities account (for example, stocks and bonds) or other investment accounts held such as 401K, trust funds, annuities, and dividends . |
| Proof of Occupancy | We need two (2) forms of verification that you occupy the property as your primary residence. For any individual who is not on the account that is contributing income to help support the mortgage payments, we need to verify their occupancy as well.<br>**At least one of the following is required:**<br>• Current year's signed tax return<br>• Most recent bank statement<br>• Most recent pay check stub<br>• Property tax bill<br>• Homeowner insurance declaration<br>• Vehicle registration<br>**If you are only able to supply one item from the above list, the second form of verification may include:**<br>• A gas or electric utility bill reflecting both the mailing and service address.<br>**For customers that receive mail through a post office box**, a letter from your local post office stating the physical address provided at the time the post office box was opened is acceptable. |
| Non-Customer Credit Check Authorization | For each non-customer (defined as a spouse, domestic partner, relative, or fiancé who resides in the customer's primary residence, and whose income is being utilized towards mortgage-related expenses) residing in the customer's primary residence, we must obtain written authorization from the non-customer to obtain a copy of their credit report.<br><br>This document is used to obtain a credit report to verify the occupancy of the non-customer, as well as confirm the amount or percentage of the non-customer's income contributed. A copy of this document is enclosed or can be obtained from our website at www.spservicing.com or by calling 888-818-6032. |

052

| Non-Customer Income | For each non-customer (defined as your spouse, domestic partner, relative, or fiancé who resides in your primary residence, and whose income is being utilized towards mortgage-related expenses), the non-customer must provide income documentation (pay stubs, profit and loss statement, Social Security benefits statement, or other recurring income sources) for each source of income. |
|---|---|
| Homeowners Association | For properties that are part of a homeowners or condominium association, we must obtain a letter or a bill reflecting the dues and frequency paid. |

LR081 1535.V.2.1

 **SELECT** *Portfolio* **SERVICING**, *inc.*

Request for Mortgage Assistance (RMA)

If you are experiencing a financial hardship and need help, you must complete and submit this form to be considered for foreclosure prevention options. If you are no longer experiencing a hardship, and you have funds available to bring the account current, please call us for the total amount due.

You may complete and submit this form online by logging into your account at www.spservicing.com and clicking the Request for Mortgage Assistance option.

**When you sign and date this form, you will make important certifications, representations, and agreements, including certifying that all of the information in this RMA is accurate and truthful.**

### SECTION 1: BORROWER INFORMATION (REQUIRED)

Please provide at least one phone number in the section below:

| BORROWER | CO-BORROWER |
|---|---|
| BORROWER NAME | CO-BORROWER NAME |
| HOME PHONE NUMBER WITH AREA CODE | HOME PHONE NUMBER WITH AREA CODE |
| WORK PHONE NUMBER WITH AREA CODE | WORK PHONE NUMBER WITH AREA CODE |
| CELL PHONE NUMBER WITH AREA CODE<br>☐ By checking this box, I consent to being contacted at this cellular number | CELL PHONE NUMBER WITH AREA CODE<br>☐ By checking this box, I consent to being contacted at this cellular number |

### SECTION 2: RESOLUTION PLAN (REQUIRED)

I want to: (Please check the option that applies)

☐ Keep the property – Retaining the property requires bringing the account current through one of several options. The account will be evaluated for all eligible options from the list below:

A *modification* which includes adding the past due interest and other advances to the unpaid principal balance and adjusting the account terms and/or payment amount,

A *payment deferral* which brings the account current by deferring the payment of past due principal and interest amounts until the account is paid off or matures,

A *repayment plan* which brings the account current by adding a portion of the past due amount to the monthly payment for a period of up to 12 months, or

An *unemployment forbearance plan* which requires monthly payments based on a percentage of the monthly benefit amount being received for a period of up to 6 months followed by either a reinstatement of the account or evaluation for other home retention options.

☐ Sell the Property – Selling the property for less than the payoff amount is commonly referred to as a Short Sale. If you do not currently have an offer to purchase the property, you may be evaluated for a 60 day forbearance period in order to provide time to list the property and receive an offer.

☐ Negotiate the Payoff – Paying off the account, through a refinance or other funds, for less than the payoff amount due is commonly referred to as a Short Payoff.

☐ Surrender the property – Relinquishing the property and signing the deed to the owner of the account is commonly referred to as a Deed-in-Lieu of Foreclosure.

### SECTION 3: HARDSHIP EXPLANATION (REQUIRED)

REQUIRED: Explanation of hardship. Please provide details and dates. (Continue on a separate sheet of paper if necessary. Please indicate "See Attached" in the space below if utilizing additional pages):



## SECTION 4: EMPLOYMENT/INCOME STATUS (REQUIRED)

Please check the status that applies:

| At least one borrower is unemployed and receiving/will receive unemployment benefits | ☐ Yes ☐ No |
|---|---|
| **A copy of your most recent unemployment benefits statement must be submitted with this document** | |

## SECTION 5: BORROWER AND CO-BORROWER ACKNOWLEDGEMENT AND AGREEMENT (REQUIRED)

1. I certify that all of the information in this RMA is truthful and the hardship(s) identified above has/have contributed to submission of this request for mortgage assistance.
2. I certify that my cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time.
3. I certify that I am willing to provide all requested documents and to respond to all Servicer communications in a timely manner. I understand that time is of the essence.
4. I understand that the Servicer will use the information I provide to evaluate my eligibility for available relief options and foreclosure alternatives, but the Servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with my request.
5. I understand that there may be tax implications for some assistance programs; and if approved for an assistance program, I will consult a tax advisor if I have questions about how completing the program may impact my taxable income.
6. I understand that my account will be reported to the credit reporting agencies to reflect any accepted and completed assistance program.

_____          _____
Borrower Signature                                          Date

_____          _____
Co-Borrower Signature                                     Date

_____
SPS Account Number

*If you have questions about this document please call your servicer.*

*If you need financial counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673).*

*The Hotline offers free HUD certified counseling services in English and Spanish.*

**888-995-HOPE**™
Homeowner's HOPE® Hotline

## NOTICE TO BORROWERS

### Beware of Foreclosure Rescue Scams. Help is FREE!

- There is never a fee to get assistance or information about Foreclosure Prevention Programs from your lender.
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent account.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

056

Form **4506-T**
(July 2017)
Department of the Treasury
Internal Revenue Service

## Request for Transcript of Tax Return

▶ **Do not sign this form unless all applicable lines have been completed.**
▶ **Request may be rejected if the form is incomplete or illegible.**
▶ **For more information about Form 4506-T, visit** *www.irs.gov/form4506t.*

OMB No. 1545-1872

**Tip.** Use Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." under "Tools" or call 1-800-908-9946. If you need a copy of your return, use **Form 4506, Request for Copy of Tax Return.** There is a fee to get a copy of your return.

| | |
|---|---|
| **1a** Name shown on tax return. If a joint return, enter the name shown first. | **1b** First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions) |
| **2a** If a joint return, enter spouse's name shown on tax return. | **2b** Second social security number or individual taxpayer identification number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

**4** Previous address shown on the last return filed if different from line 3 (see instructions)

**5** If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

Select Portfolio Servicing, Inc., PO Box 65250, Salt Lake City, UT 84165-0250, 888-818-6032

**Caution:** If the tax transcript is being mailed to a third party, ensure that you have filled in lines 6 through 9 before signing. Sign and date the form once you have filled in these lines. Completing these steps helps to protect your privacy. Once the IRS discloses your tax transcript to the third party listed on line 5, the IRS has no control over what the third party does with the information. If you would like to limit the third party's authority to disclose your transcript information, you can specify this limitation in your written agreement with the third party.

**6** **Transcript requested.** Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. ▶ 1040

**a** **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. A tax return transcript does not reflect changes made to the account after the return is processed. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120-A, Form 1120-H, Form 1120-L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. Most requests will be processed within 10 business days . . . . . . ☐

**b** **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns. Most requests will be processed within 10 business days . . ☐

**c** **Record of Account,** which provides the most detailed information as it is a combination of the Return Transcript and the Account Transcript. Available for current year and 3 prior tax years. Most requests will be processed within 10 business days . . . . . . ☐

**7** **Verification of Nonfiling,** which is proof from the IRS that you **did not** file a return for the year. Current year requests are only available after June 15th. There are no availability restrictions on prior year requests. Most requests will be processed within 10 business days . ☐

**8** **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2011, filed in 2012, will likely not be available from the IRS until 2013. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213. Most requests will be processed within 10 business days . ☐

**Caution:** If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

**9** **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T. For requests relating to quarterly tax returns, such as Form 941, you must enter each quarter or tax period separately.

| 12 / 31 / 2017 | 12 / 31 / 2016 | 12 / 31 / 2015 | / / |
|---|---|---|---|

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax  matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer. **Note:** This form must be received by IRS within 120 days of the signature date.

☐ **Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506-T.** See instructions.

Phone number of taxpayer on line 1a or 2a

**Sign Here**

▶ Signature (see instructions)                          Date

▶ Title (if line 1a above is a corporation, partnership, estate, or trust)

▶ Spouse's signature                                    Date

**For Privacy Act and Paperwork Reduction Act Notice, see page 2.**          Cat. No. 37667N          Form **4506-T** (Rev. 7-2017)



057

Form 4506-T (Rev. 7-2017)                                                                 Page **2**

Section references are to the Internal Revenue Code unless otherwise noted.

## Future Developments

For the latest information about Form 4506-T and its instructions, go to *www.irs.gov/form4506t*. Information about any recent developments affecting Form 4506-T (such as legislation enacted after we released it) will be posted on that page.

## General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate (on line 5) a third party to receive the information. Taxpayers using a tax year beginning in one calendar year and ending in the following year (fiscal tax year) must file Form 4506-T to request a return transcript.

**Note:** If you are unsure of which type of transcript you need, request the Record of Account, as it provides the most detailed information.

**Tip.** Use Form 4506, Request for Copy of Tax Return, to request copies of tax returns.

**Automated transcript request.** You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." under "Tools" or call 1-800-908-9946.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series and Form W-2) and one for all other transcripts.

If you are requesting more than one transcript or other product and the chart below shows two different addresses, send your request to the address based on the address of your most recent return.

## Chart for individual transcripts (Form 1040 series and Form W-2 and Form 1099)

**If you filed an individual return and lived in:** / **Mail or fax to:**

| If you filed an individual return and lived in: | Mail or fax to: |
|---|---|
| Alabama, Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team Stop 6716 AUSC Austin, TX 73301  855-587-9604 |
| Alaska, Arizona, Arkansas, California, Colorado, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | Internal Revenue Service RAIVS Team Stop 37106 Fresno, CA 93888  855-800-8105 |
| Connecticut, Delaware, District of Columbia, Florida, Georgia, Maine, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, South Carolina, Vermont, Virginia, West Virginia | Internal Revenue Service RAIVS Team Stop 6705 P-6 Kansas City, MO 64999  855-821-0094 |

## Chart for all other transcripts

**If you lived in or your business was in:** / **Mail or fax to:**

| If you lived in or your business was in: | Mail or fax to: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Texas, Utah, Washington, Wyoming, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409  855-298-1145 |
| Connecticut, Delaware, District of Columbia, Georgia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, West Virginia, Wisconsin | Internal Revenue Service RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250  855-800-8015 |

**Line 1b.** Enter your employer identification number (EIN) if your request relates to a business return. Otherwise, enter the first social security number (SSN) or your individual taxpayer identification number (ITIN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 3.** Enter your current address. If you use a P.O. box, include it on this line.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address. For a business address, file Form 8822-B, Change of Address or Responsible Party — Business.

**Line 6.** Enter only one tax form number per request.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506-T within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines are completed before signing.



*You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed and returned to you if the box is unchecked.*

**Individuals.** Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506-T but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 9.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506-T for a taxpayer only if the taxpayer has specifically delegated this authority to the representative on Form 2848, line 5. The representative must attach Form 2848 showing the delegation to Form 4506-T.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. You are not required to request any transcript; if you do request a transcript, sections 6103 and 6109 and their regulations require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 12 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

Do not send the form to this address. Instead, see *Where to file* on this page.



FRANCIS J SAMPSON JR
85 HERITAGE LN
DUXBURY, MA 02332



059

LR981 1535.V.2.1

- This is an important notice concerning your right to live in your home. Have it translated at once.

- Esta carta explica sus derechos legales para permanecer en su propiedad de vivienda. Por favor traduzca esta notificacion inmediatamente.

- Este é um aviso importante em relação ao seu direito de morar na sua residência. Por favor, tem tradizido imediatamente.

- C'est une notification importante concernant votre droit de vivre chez vous. Faites-la traduire immédiatement.

- 这是一则关於您居住权的重要通知，请儘快安排翻译。

### 90-Day Right to Cure Your Mortgage Default

October 16, 2018

BY FIRST-CLASS MAIL AND BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED

FRANCIS J SAMPSON JR
85 HERITAGE LN
DUXBURY, MA 02332

RE:    85 HERITAGE LN,  DUXBURY, MA 02332; loan ███████ with Select Portfolio Servicing, Inc. (SPS), as servicer for U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 (c/o SPS, PO Box 65250 Salt Lake City, UT 84165-0250) (Mortgagee); Mortgage Loan Originator: Washington Mutual Bank, FA;

To FRANCIS J SAMPSON JR:

We are contacting you because you did not make your monthly loan payment(s) due on 01/01/2010, 02/01/2010, 03/01/2010, 04/01/2010, 05/01/2010, 06/01/2010, 07/01/2010, 08/01/2010, 09/01/2010, 10/01/2010, 11/01/2010, 12/01/2010, 01/01/2011, 02/01/2011, 03/01/2011, 04/01/2011, 05/01/2011, 06/01/2011, 07/01/2011, 08/01/2011, 09/01/2011, 10/01/2011, 11/01/2011, 12/01/2011, 01/01/2012, 02/01/2012, 03/01/2012, 04/01/2012, 05/01/2012, 06/01/2012, 07/01/2012, 08/01/2012, 09/01/2012, 10/01/2012, 11/01/2012, 12/01/2012, 01/01/2013, 02/01/2013, 03/01/2013, 04/01/2013, 05/01/2013, 06/01/2013, 07/01/2013, 08/01/2013, 09/01/2013, 10/01/2013, 11/01/2013, 12/01/2013, 01/01/2014, 02/01/2014, 03/01/2014, 04/01/2014, 05/01/2014, 06/01/2014, 07/01/2014, 08/01/2014, 09/01/2014, 10/01/2014, 11/01/2014, 12/01/2014, 01/01/2015, 02/01/2015, 03/01/2015, 04/01/2015, 05/01/2015, 06/01/2015, 07/01/2015, 08/01/2015, 09/01/2015, 10/01/2015, 11/01/2015, 12/01/2015, 01/01/2016, 02/01/2016, 03/01/2016, 04/01/2016, 05/01/2016, 06/01/2016, 07/01/2016, 08/01/2016, 09/01/2016, 10/01/2016, 11/01/2016, 12/01/2016, 01/01/2017, 02/01/2017, 03/01/2017, 04/01/2017, 05/01/2017, 06/01/2017, 07/01/2017, 08/01/2017, 09/01/2017, 10/01/2017, 11/01/2017, 12/01/2017, 01/01/2018, 02/01/2018, 03/01/2018, 04/01/2018, 05/01/2018, 06/01/2018, 07/01/2018, 08/01/2018, 09/01/2018, 10/01/2018 to SPS. You must pay the past due amount of $570,659.94 on or before January 17, 2019, which is 90 days from the date of this notice. The past due amount on the date of this notice is specified below:

- $3,697.09 Principal & Interest due on 01/01/2010; $3,697.09 Principal & Interest due on 02/01/2010; $3,697.09 Principal & Interest due on 03/01/2010; $3,697.09 Principal & Interest due on 04/01/2010; $3,974.37 Principal & Interest due on 05/01/2010; $3,974.37 Principal & Interest due on 06/01/2010; $3,974.37 Principal & Interest due on 07/01/2010; $3,974.37 Principal & Interest due on 08/01/2010; $3,974.37 Principal & Interest due on 09/01/2010; $3,974.37 Principal & Interest due on 10/01/2010; $3,974.37 Principal & Interest due on 11/01/2010; $3,974.37 Principal & Interest due on 12/01/2010;



LR981 1535.V.2.1    00180605000019021200

$3,974.37 Principal & Interest due on 01/01/2011; $3,974.37 Principal & Interest due on 02/01/2011;
$3,974.37 Principal & Interest due on 03/01/2011; $3,974.37 Principal & Interest due on 04/01/2011;
$4,272.44 Principal & Interest due on 05/01/2011; $4,272.44 Principal & Interest due on 06/01/2011;
$4,272.44 Principal & Interest due on 07/01/2011; $4,272.44 Principal & Interest due on 08/01/2011;
$4,272.44 Principal & Interest due on 09/01/2011; $4,272.44 Principal & Interest due on 10/01/2011;
$4,272.44 Principal & Interest due on 11/01/2011; $4,272.44 Principal & Interest due on 12/01/2011;

$4,272.44 Principal & Interest due on 01/01/2012; $4,272.44 Principal & Interest due on 02/01/2012;
$4,272.44 Principal & Interest due on 03/01/2012; $4,272.44 Principal & Interest due on 04/01/2012;
$4,656.96 Principal & Interest due on 05/01/2012; $4,656.96 Principal & Interest due on 06/01/2012;
$4,656.96 Principal & Interest due on 07/01/2012; $4,656.96 Principal & Interest due on 08/01/2012;
$4,656.96 Principal & Interest due on 09/01/2012; $4,656.96 Principal & Interest due on 10/01/2012;
$4,656.96 Principal & Interest due on 11/01/2012; $4,656.96 Principal & Interest due on 12/01/2012;

$4,656.96 Principal & Interest due on 01/01/2013; $4,656.96 Principal & Interest due on 02/01/2013;
$4,656.96 Principal & Interest due on 03/01/2013; $4,656.96 Principal & Interest due on 04/01/2013;
$4,653.88 Principal & Interest due on 05/01/2013; $4,653.88 Principal & Interest due on 06/01/2013;
$4,653.88 Principal & Interest due on 07/01/2013; $4,653.88 Principal & Interest due on 08/01/2013;
$4,653.88 Principal & Interest due on 09/01/2013; $4,653.88 Principal & Interest due on 10/01/2013;
$4,653.88 Principal & Interest due on 11/01/2013; $4,653.88 Principal & Interest due on 12/01/2013;

$4,653.88 Principal & Interest due on 01/01/2014; $4,653.88 Principal & Interest due on 02/01/2014;
$4,653.88 Principal & Interest due on 03/01/2014; $4,653.88 Principal & Interest due on 04/01/2014;
$4,628.12 Principal & Interest due on 05/01/2014; $4,628.12 Principal & Interest due on 06/01/2014;
$4,628.12 Principal & Interest due on 07/01/2014; $4,628.12 Principal & Interest due on 08/01/2014;
$4,628.12 Principal & Interest due on 09/01/2014; $4,628.12 Principal & Interest due on 10/01/2014;
$4,628.12 Principal & Interest due on 11/01/2014; $4,628.12 Principal & Interest due on 12/01/2014;

$4,628.12 Principal & Interest due on 01/01/2015; $4,628.12 Principal & Interest due on 02/01/2015;
$4,628.12 Principal & Interest due on 03/01/2015; $4,628.12 Principal & Interest due on 04/01/2015;
$4,625.56 Principal & Interest due on 05/01/2015; $4,625.56 Principal & Interest due on 06/01/2015;
$4,625.56 Principal & Interest due on 07/01/2015; $4,625.56 Principal & Interest due on 08/01/2015;
$4,625.56 Principal & Interest due on 09/01/2015; $4,625.56 Principal & Interest due on 10/01/2015;
$4,625.56 Principal & Interest due on 11/01/2015; $4,625.56 Principal & Interest due on 12/01/2015;

$4,625.56 Principal & Interest due on 01/01/2016; $4,625.56 Principal & Interest due on 02/01/2016;
$4,625.56 Principal & Interest due on 03/01/2016; $4,625.56 Principal & Interest due on 04/01/2016;
$4,718.27 Principal & Interest due on 05/01/2016; $4,718.27 Principal & Interest due on 06/01/2016;
$4,718.27 Principal & Interest due on 07/01/2016; $4,718.27 Principal & Interest due on 08/01/2016;
$4,718.27 Principal & Interest due on 09/01/2016; $4,718.27 Principal & Interest due on 10/01/2016;
$4,718.27 Principal & Interest due on 11/01/2016; $4,718.27 Principal & Interest due on 12/01/2016;

$4,718.27 Principal & Interest due on 01/01/2017; $4,718.27 Principal & Interest due on 02/01/2017;
$4,718.27 Principal & Interest due on 03/01/2017; $4,718.27 Principal & Interest due on 04/01/2017;
$4,851.88 Principal & Interest due on 05/01/2017; $4,851.88 Principal & Interest due on 06/01/2017;
$4,851.88 Principal & Interest due on 07/01/2017; $4,851.88 Principal & Interest due on 08/01/2017;
$4,851.88 Principal & Interest due on 09/01/2017; $4,851.88 Principal & Interest due on 10/01/2017;
$4,851.88 Principal & Interest due on 11/01/2017; $4,851.88 Principal & Interest due on 12/01/2017;

LR981 1535.V.2.1

$4,851.88 Principal & Interest due on 01/01/2018; $4,851.88 Principal & Interest due on 02/01/2018;
$4,851.88 Principal & Interest due on 03/01/2018; $4,851.88 Principal & Interest due on 04/01/2018;
$5,112.81 Principal & Interest due on 05/01/2018; $5,112.81 Principal & Interest due on 06/01/2018;
$5,112.81 Principal & Interest due on 07/01/2018; $5,112.81 Principal & Interest due on 08/01/2018;
$5,112.81 Principal & Interest due on 09/01/2018; $5,112.81 Principal & Interest due on 10/01/2018;

• $87,729.68 Outstanding Escrow Balance;

• $887.28 Late Charge due on 08/08/2013

If you pay the past due amount, and any additional monthly payments, late charges or fees that may become due between the date of this notice and the date when you make your payment, your account will be considered up-to-date and you can continue to make your regular monthly payments.

Make your payment directly to:

        Select Portfolio Servicing, Inc.
        Attn:  Cashiering Department
        PO Box 65450 Salt Lake City, UT 84165-0450

Please consider the following:

• You should contact the Homeownership Preservation Foundation (888-995-HOPE) to speak with counselors who can provide assistance and may be able to help you work with your lender to avoid foreclosure;

• If you are a MassHousing borrower, you may also contact MassHousing (617-854-1000) to determine if you are eligible for additional assistance. There may be other homeownership assistance available through your lender or servicer;

• You may also contact the Division of Banks (617-956-1500) or visit www.mass.gov/foreclosures to find a foreclosure prevention program near you;

• After January 17, 2019, you can still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place.  Depending on the terms of the loan, there may also be other ways to avoid foreclosure, such as selling your property, refinancing your loan, or voluntarily transferring ownership of the property to U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4.

**If you do not pay the total past due amount of $570,659.94 and any additional payments that may become due by January 17, 2019, you may be evicted from your home after a foreclosure sale.  If U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 forecloses on this property, it means the mortgagee or a new buyer will take over the ownership of your home.**

If you have questions, or disagree with the calculation of your past due balance, please contact SPS at 800-635-9698 or PO Box 65277 Salt Lake City, UT 84165-0277.

Sincerely,

Lindsey Clissold
Vice President, Quality Control Department
Select Portfolio Servicing, Inc.

Enclosed with this notice, there may be additional important disclosures related to applicable laws and requirements that you should carefully review.

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

LR981 1535.V.2.1



October 16, 2018

FRANCIS J SAMPSON JR
85 HERITAGE LN
DUXBURY, MA 02332


**Account Number:**          ███████████
**Property Address:**        85 HERITAGE LN
                             DUXBURY, MA 02332

Dear Customer(s):

This letter provides additional information about your mortgage loan default and is intended to complement the enclosed "90 Day Right to Cure Your Mortgage Default" (the "90 Day Notice"). In the event of any conflict between the terms of this letter and those contained in the 90 Day Notice, the terms of the 90 Day Notice will control.

As noted in the 90 Day Notice, the mortgage on your property is in default as a result of your failure to make payments as required by the Note and Deed of Trust or Mortgage (Security Instrument). Select Portfolio Servicing, Inc. (SPS) services your mortgage loan and has been instructed on behalf of the holder of the promissory note to pursue remedies under the Security Instrument unless you take action to cure the default as detailed in the 90 Day Notice.

**Possible Consequences of Default**
If we do not receive the past due amount by the date listed in the 90 Day Notice, or some loss mitigation alternative to foreclosure has not started, SPS may initiate foreclosure and require immediate payment in full of the entire outstanding unpaid amount on the account. In other words, failure to cure the default on or before January 17, 2019 may result in acceleration of sums secured by the Security Instrument and sale of the Property. If that happens, you may lose your home. A foreclosure will result in the involuntary loss of the property via sale to the lender, or another person may acquire the property by means of foreclosure and sale, and you may be evicted. Once foreclosure is initiated, additional amounts for legal fees and costs may be incurred.  These sums can be significant. They may be added to amounts secured by the Security Instrument, and they may be required to be paid, to the extent permitted by law, if you wish to reinstate or satisfy the loan after foreclosure is initiated.

**Payment Options**
Please provide payments to the following address:

Sent via US Mail to:                          Sent via overnight courier to:
**Select Portfolio Servicing, Inc.**          **Select Portfolio Servicing, Inc.**
**PO Box 65450 Salt Lake City, UT 84165-0450** **Attn: Remittance Processing**
                                              **3217 S. Decker Lake Dr., Salt Lake City, UT 84119**

Payments may be submitted in the following forms:

   (a) Personal check
   (b) Money order
   (c) Bank wire (electronic funds transfer). Please contact SPS for the information necessary to complete a bank wire.
   (d) Certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency.
   (e) Western Union Quick Collect. Reference the loan number above and deliver to Code City: Oswald, Code State: UT.



065

In some circumstances, you may be able to submit a payment through EZ Pay by calling 800-258-8602 or visiting our website at www.spservicing.com. Please remember that EZ Pay payments clear quickly, and you must have the funds in your checking account on the day you ask us to process a payment. We will obtain your consent prior to initiating payment and will advise you of any fee for this service, which may be up to $15.00.

SPS requires that you pay reinstatement amounts in certified funds. Certified funds include a bank wire, cashier's bank check, attorney trust account check, title or escrow company check, or Western Union Quick Collect. Please contact SPS at 800-635-9698 for instructions on submitting these funds.

**<u>You Have Options to Avoid Foreclosure!</u>**
SPS is committed to home retention and offers many customer assistance programs designed to help customers avoid foreclosure. These programs are offered at no cost to our customers and are designed to help preserve home ownership or prevent foreclosure through structured repayment plans, special payment arrangements, modifications, short settlements, and deed-in-lieu options, if you are eligible.  If you would like to learn more about these programs, you should immediately contact an SPS representative at our toll-free number, 800-635-9698, or visit our website at www.spservicing.com. Our representatives are available by phone Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

If you have any questions, your assigned Relationship Manager, Barbara Emery, can be reached toll free at 888-818-6032 Ext. 36471 or by email at Relationship.Manager@SPServicing.com.

**If we can reach an agreement to resolve your default, we will not proceed with and/or commence foreclosure, as long as you comply with the agreement and make required payments.**

**Servicemembers Civil Relief Act (SCRA)**
SPS is committed to home ownership assistance for active servicemembers and veterans of the United States military. You may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. 3901 et seq.) regarding your interest rate and the risk of foreclosure if you are a servicemember or a dependent of a servicemember. Counseling for covered servicemembers is available at agencies such as Military OneSource (800-342-9647 or www.militaryonesource.mil) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil).  Note: your state may have more expansive eligibility criteria than below.  Please contact us as soon as possible if you have any questions or believe you may be eligible.

Eligible service may include, but is not limited to:

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard), or
- Reserve and National Guard personnel who have been activated and are on Federal active duty, or
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds, or
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, or
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

Please send written notice of military service as soon as possible to:

Select Portfolio Servicing, Inc.
PO Box 65250 Salt Lake City, UT 84165-0250

If you have questions regarding eligibility and application requirements, please call us at 800-258-8602.

LR981 1535.V.2.1

**Your Rights**

If you wish to dispute your delinquency or the correctness of the past due amount listed in the 90 Day Notice, you may do so by providing a written dispute to SPS at the following address:

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

You may call SPS at our toll free number 800-258-8602 to discuss your dispute. However, to protect your rights under federal law, you will need to provide written notice to SPS if you believe that your dispute is unresolved.

You have the right to reinstate after acceleration of your loan and commencement of foreclosure proceedings. If you reinstate, the Security Instrument shall remain fully effective as if no acceleration had occurred.

You have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.

A review of the HUD-1 specifies that Washington Mutual Bank, FA was listed as your mortgage broker/originator for this mortgage. We are supplying this information as required by the Commonwealth of Massachusetts.

**Counseling**

HUD approved home ownership counseling may be available to you. You should call (800) 569-4287 or TDD (800) 877-8339, or go to HUD's website at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm to find the HUD-approved housing counseling agency nearest you. You may be eligible for assistance from the Homeownership Preservation Foundation, which may be reached at the Homeowner's HOPE™ Hotline at 888-995-HOPE™ (888-995-4673) or at their website, www.995hope.org, or you make seek help from another non-profit foreclosure avoidance agency.

Financial assistance may be available to you from programs operated by the State or Federal Government. Below is a list of Government agencies that you may wish to contact or ascertain whether you qualify for assistance.

| | |
|---|---|
| **Massachusetts Division of Banks** | (617) 956-1500 |
| **Massachusetts Housing Finance Agency** | (617) 854-1000, (413) 733-0999 or (800) 439-2370 |
| | www.masshousing.com |
| **HUD Approved Housing Counseling** | (800) 569-4287 |
| | https://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm |
| **Veterans Administration** | (800) 827-1000 |
| **HOPE Hotline** | (888) 995-HOPE (4673) |

You have options to avoid foreclosure. THE TIME TO ACT IS NOW. Please call us at 800-635-9698.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**



LR981 1535.V.2.1

- This is an important notice concerning your right to live in your home. Have it translated at once.

- Esta carta explica sus derechos legales para permanecer en su propiedad de vivienda. Por favor traduzca esta notificacion inmediatamente.

- Este é um aviso importante em relação ao seu direito de morar na sua residência. Por favor, tem tradizido imediatamente.

- C'est une notification importante concernant votre droit de vivre chez vous. Faites-la traduire immédiatement.

- 这是一则关於您居住权的重要通知，请儘快安排翻译。

## RIGHT TO REQUEST A MODIFIED MORTGAGE LOAN

October 16, 2018

BY FIRST-CLASS MAIL AND BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED

FRANCIS J SAMPSON JR
85 HERITAGE LN
DUXBURY, MA 02332

RE:     85 HERITAGE LN,  DUXBURY, MA 02332; loan ████████ with Select Portfolio Servicing, Inc. (SPS), as servicer for U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 (c/o SPS, PO Box 65250 Salt Lake City, UT 84165-0250) (Mortgagee); Mortgage Loan Originator: Washington Mutual Bank, FA.

To FRANCIS J SAMPSON JR:

We are contacting you because our records indicate you are eligible to request a modification of your mortgage with SPS. If you want to request a loan modification or other foreclosure alternative option, you must complete and return the enclosed Mortgage Modification Options form along with any supporting information no later than November 15, 2018. The Mortgage Modification Options form and any supporting documents must be returned by certified mail or similar service to SPS. We will respond to your request within 30 days of its receipt.

Please be aware this notice of Right to Request a Modified Mortgage Loan is different from the Right to Cure Your Mortgage Default notice that you may have already received. *The enclosed Mortgage Modification Options form provides you with four choices. These choices impact the options under the Right to Cure notice and should be carefully considered.* If you do not want to request a loan modification, you must still return the enclosed Mortgage Modification Options form. Please keep a copy of everything you send to us and keep proof of mailing the materials to us.

**If you do not return the enclosed Mortgage Modification Options form and a completed loan modification application by November 15, 2018 your right to cure your mortgage default will end on January 17, 2019.**

If you have questions, please contact SPS at 888-818-6032 or PO Box 65250 Salt Lake City, UT 84165-0250. If you would like assistance from the Attorney General's Office, you may contact the HomeCorps hotline at 617-573-5333 to speak with a loan modification specialist who can assist you.

We suggest you mention this notice when you call.

Sincerely,

Lindsey Clissold
Vice President, Quality Control Department
Select Portfolio Servicing, Inc.

Enclosed with this notice, there may be additional important disclosures related to applicable laws and requirements that you should carefully review.

Enclosures:

- Mortgage Modification Options Form
- Request for Mortgage Assistance Form
- IRS Form 4506-T

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición  para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

**Minnesota - This collection agency is licensed by the Minnesota Department of Commerce New York City - Collection Agency License # 1170514**

LR981 1535.V.2.1

## MORTGAGE MODIFICATION OPTIONS

You must return this form in the enclosed envelope by November 15, 2018

**FRANCIS J SAMPSON JR**
**85 HERITAGE LN**
**DUXBURY, MA 02332**

RE:    85 HERITAGE LN,  DUXBURY, MA 02332; loan ██████ with Select Portfolio Servicing, Inc. (SPS).

To FRANCIS J SAMPSON JR:

You must check one of the following boxes to notify SPS of how you would like to proceed.

☐  I would like to request a loan modification. I have attached a complete statement of my income and list of assets, total debts and obligations as requested by the creditor in the form(s) which accompanied the Right to Request a Modified Loan Notice. I maintain my right to a 90 day period to cure my mortgage default.

☐  I would like to request a different foreclosure alternative such as a short sale or deed-in lieu of foreclosure. I maintain my right to a 90 day period to cure my mortgage default.

☐  I do not want to request a loan modification or any foreclosure alternative. I maintain my right to a 90 day period to cure my mortgage default.

☐  I want to waive my right to cure the default on my mortgage loan and proceed to foreclosure. I understand that by choosing this option I waive the remaining time, if any, of my right to the 90 day cure period.

_____          _____
Borrower Name                                              Date

_____
Borrower Telephone

LR981 1535.V.2.1



## REQUIRED INFORMATION NOTICE

Dear Customer(s):

Select Portfolio Servicing, Inc. (SPS) offers assistance options designed for customers who are experiencing temporary or permanent hardship and we look to forward to working with you.

In order for us to review your request for assistance, you must first submit a complete loss mitigation application. This letter describes the Required Information you are required to submit to us in connection with a complete application for available loss mitigation options.  We have many assistance options designed for customers who are experiencing temporary or permanent hardships.  These options are offered at no cost to our customers and may include structured repayment plans, modifications, or account settlement alternatives, such as short sales or deeds in lieu of foreclosure. If your property also secures other accounts, you should consider contacting the servicer(s) of those accounts to discuss available loss mitigation options.

Please contact SPS immediately if you have any questions. Once we have received all Required Information, you will receive an acknowledgement from SPS that we have a complete application and can begin our review. If you have recently provided documents, they will be included as part of our review.

**If there is a foreclosure sale scheduled for your home in the next thirty (30) days you are required to send all documentation via overnight mail with delivery confirmation.** Please know that while we are evaluating your complete application, your account will not be referred to foreclosure nor will it be sold at a foreclosure sale if the foreclosure process has already been initiated. If a foreclosure sale has already been scheduled we will instruct our attorney to file a motion (or other similar action) to postpone such sale. It is possible however that a court will deny the motion and the sale will proceed. If that happens we will be unable to provide loss mitigation. If you are unsure if there is a sale scheduled for the property in the next thirty (30) days please contact us immediately at 888-818-6032. All documents sent via overnight mail must be addressed to:

**Select Portfolio Servicing, Inc.**
**3217 S. Decker Lake Dr., Salt Lake City, UT 84119**

As noted above, in order for us to review your account for all available loss mitigation programs we require a complete application, which requires you to submit all Required Information. The Required Information are described below. To aid in identifying your documents, should they be sent separately or get separated, please include your account number on the bottom of all pages. You may fax, email, or mail the Required Information to:

**Select Portfolio Servicing, Inc.**
**PO Box 65200 Salt Lake City, UT 84165-0250**
**Fax: 866-867-3019**
**Email: Relationship.Manager@SPServicing.com**
**Website:  www.spservicing.com**

Keep in mind that, in general, documentation must be dated within the last ninety (90) days to be considered valid. Once we have received your complete application and any necessary third party approvals, you will be evaluated for all loss mitigation options available to you and the results will be sent to you within thirty (30) days after we receive your complete application. This notification will provide, as applicable:

- Details of the loss mitigation program for which you are approved, including, any information on how and when you must accept the offer, which at a minimum will be 14 days.
- Names of all loss mitigation programs for which you were evaluated but not approved, including, the results of any Net Present Value (NPV) tests if applicable.
- Information on how to appeal the denial of a modification plan if applicable.



073

**This is an important notice to provide the Required Information. Time is of the essence!**

Please know that you are entitled to a copy of the property valuation report we may order in connection with any applicable account modification review. We will send the valuation report to you upon completion of the valuation.

**Notice of Error or Information Request**

If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All Notices of Error or Information Requests must be sent in writing to the address listed below, as this is our exclusive address under Federal law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal law.

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

At SPS, any of our trained servicing representatives can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact our Loan Resolution Department. Our toll-free number is 888-818-6032, and representatives are available Monday through Thursday between the hours of Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

If you would like to speak with a HUD approved counselor, call the Homeowner's HOPE™ Hotline 888-995-HOPE (4673). The Homeowner's HOPE™ Hotline offers free HUD-certified counseling services and is available 24/7 in English and Spanish. Other languages are available by appointment.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

**Required Information**

| | |
|---|---|
| RMA/Hardship Affidavit | A completed Request For Mortgage Assistance signed by all customers. This form, or an attached letter, must contain a detailed explanation of the hardship, including information on when the hardship began. A copy of this document is enclosed with this letter or it can be obtained from our website at www.spservicing.com or by calling 888-818-6032. |
| Profit and Loss Statement | **For each customer who is self-employed:**<br>• Each self-employed borrower customer must provide copies of each of the most recent quarterly or year-to-date profit and loss statement, covering at least a three (3) month period, for each business owned. The statement must include the business name, income, cost of goods sold, other income, expenses, net income after expenses and period start and end dates (for example 10/1/2012 through 12/31/2012). The statement must be signed and dated by the customer. If you are no longer self-employed, please provide a copy of your cancelled business license or letter of explanation.<br>• K-1 / Tax Form 1120S or 1065B – A copy of the shareholder's share of income for self-employment income listed on Schedule E of your recent tax returns for verification of percentage of ownership. |

LR981 1535.V.2.1

| Rental Income | **For each customer who has rental income:**<br>• Copies of the 2 (two) most recent payments evidencing receipt of income, such as a bank statement or canceled check, and<br>• The current lease agreement for all rental properties, and<br>• Copies of the most recent years filed federal tax returns with all schedules, including Schedule E – Supplemental Income and Loss. Rental income for qualifying purposes will be 75% of the gross rent minus any mortgage-related expenses for the property. |
|---|---|
| Social Security Benefits | **For each customer with social security income:**<br>• A monthly statement or document from the government to verify all of the social security income of each customer. All documents must be less than 90 days old at the time of submission, and<br>• A copy of the two (2) most recent bank statement(s), including all pages, or copies of the two most recent benefit checks evidencing receipt of income. |
| Retirement Income | **For each customer with retirement income:**<br>• A monthly statement or document from the provider to verify all of the retirement income of each customer. All documents must be less than 90 days old at the time of submission, and<br>• A copy of the two (2) most recent bank statement(s), including all pages, or copies of the two most recent checks evidencing receipt of retirement income. |
| Insurance Benefit Income | **For each customer with insurance benefit income:**<br>• A monthly statement or document from the provider to verify all of the benefit income of each customer. All documents must be less than 90 days old at the time of submission, and<br>• A copy of the two (2) most recent bank statement(s), including all pages, or copies of the two most recent benefit checks evidencing receipt of insurance benefit income. |
| Disability Income | **For each customer with disability income:**<br>• A monthly statement or document from the government or provider to verify all of the disability income of each customer. All documents must be less than 90 days old at the time of submission, and<br>• A copy of the two (2) most recent bank statement(s), including all pages, or copies of the two most recent checks evidencing receipt of disability income. |
| Pension Income | **For each customer with pension income:**<br>• A monthly statement or document from the pension provider to verify all of the pension income of each customer. All documents must be less than 90 days old at the time of submission, and<br>• A copy of the two (2) most recent bank statement(s), including all pages, or copies of the two most recent checks evidencing receipt of pension income. |
| Public Assistance  Income | **For each customer with public assistance:**<br>• Copy of benefit statement or award letter for each income source or letter from the provider that states the amount, frequency, and duration of the benefit. Public assistance must continue for at least nine (9) months to be considered qualifying income<br>• Your two (2) most recent monthly bank statements or copies of the two most recent benefit checks or two most recent monthly online statements for public assistance EBT card recipients. |
| Unemployment Income | **For each customer with unemployment income:**<br>• Copy of benefit statement or letter from the provider that states the amount, frequency, and duration of the benefit. Unemployment benefits must continue for at least nine (9) months to be considered qualifying income.<br>• Your two (2) most recent monthly bank statements or copies of the two most recent benefit checks. |



075

| | |
|---|---|
| Alimony | **For each customer who is relying on alimony (Please note: you do not need to provide this information if you do not want us to consider it in our review):**<br>• Copy of divorce decree, separation agreement or other written agreement or decree that states the amount of alimony and period of time over which it will be received. Payments must continue for at least three (3) years to be considered qualifying income under this program; and<br>• Evidence of, regular, and timely payments for at least two (2) months; for example deposit slips, copies of bank statements, court verification. All documents must be less than 90 days old at the time of submission. The most recent years filed federal tax return, with all schedules, evidencing receipt of the income is also acceptable. |
| Child Support | **For each customer who is relying on child support (Please note: you do not need to provide this information if you do not want us to consider it in our review):**<br>• Copy of divorce decree, separation agreement or other written agreement or decree that states the amount of support and period of time over which it will be received. Payments must continue for at least three (3) years to be considered qualifying income under this program; and<br>• Evidence of, regular, and timely payments for at least two (2) months; for example deposit slips, copies of bank statements, court verification. All documents must be less than 90 days old at the time of submission. The most recent years filed federal tax return, with all schedules, evidencing receipt of the income is also acceptable. |
| Bank Statements | **For each customer who has checking and savings accounts:**<br>• A copy of the three (3) most recent statement(s) for all accounts, including all pages.<br>**For customer who owns publicly traded securities or other investments:**<br>• A copy of the most recent quarterly or a minimum of three (3) months consecutive statements for each publicly traded securities account (for example, stocks and bonds) or other investment accounts held such as 401K, trust funds, annuities, and dividends . |
| Proof of Occupancy | We need two (2) forms of verification that you occupy the property as your primary residence. For any individual who is not on the account that is contributing income to help support the mortgage payments, we need to verify their occupancy as well.<br>**At least one of the following is required:**<br>• Current year's signed tax return<br>• Most recent bank statement<br>• Most recent pay check stub<br>• Property tax bill<br>• Homeowner insurance declaration<br>• Vehicle registration<br>**If you are only able to supply one item from the above list, the second form of verification may include:**<br>• A gas or electric utility bill reflecting both the mailing and service address.<br>**For customers that receive mail through a post office box**, a letter from your local post office stating the physical address provided at the time the post office box was opened is acceptable. |
| Non-Customer Credit Check Authorization | For each non-customer (defined as a spouse, domestic partner, relative, or fiancé who resides in the customer's primary residence, and whose income is being utilized towards mortgage-related expenses) residing in the customer's primary residence, we must obtain written authorization from the non-customer to obtain a copy of their credit report.<br><br>This document is used to obtain a credit report to verify the occupancy of the non-customer, as well as confirm the amount or percentage of the non-customer's income contributed. A copy of this document is enclosed or can be obtained from our website at www.spservicing.com or by calling 888-818-6032. |

LR981 1535.V.2.1

| Non-Customer Income | For each non-customer (defined as your spouse, domestic partner, relative, or fiancé who resides in your primary residence, and whose income is being utilized towards mortgage-related expenses), the non-customer must provide income documentation (pay stubs, profit and loss statement, Social Security benefits statement, or other recurring income sources) for each source of income. |
|---|---|
| Homeowners Association | For properties that are part of a homeowners or condominium association, we must obtain a letter or a bill reflecting the dues and frequency paid. |

LR981 1535.V.2.1

 **SPS** SELECT *Portfolio* **SERVICING**, *inc.*

Request for Mortgage Assistance (RMA)

If you are experiencing a financial hardship and need help, you must complete and submit this form to be considered for foreclosure prevention options. If you are no longer experiencing a hardship, and you have funds available to bring the account current, please call us for the total amount due.

You may complete and submit this form online by logging into your account at www.spsservicing.com and clicking the Request for Mortgage Assistance option.

**When you sign and date this form, you will make important certifications, representations, and agreements, including certifying that all of the information in this RMA is accurate and truthful.**

## SECTION 1: BORROWER INFORMATION (REQUIRED)

Please provide at least one phone number in the section below:

| BORROWER | CO-BORROWER |
|---|---|
| BORROWER NAME | CO-BORROWER NAME |
| HOME PHONE NUMBER WITH AREA CODE | HOME PHONE NUMBER WITH AREA CODE |
| WORK PHONE NUMBER WITH AREA CODE | WORK PHONE NUMBER WITH AREA CODE |
| CELL PHONE NUMBER WITH AREA CODE<br>☐ By checking this box, I consent to being contacted at this cellular number | CELL PHONE NUMBER WITH AREA CODE<br>☐ By checking this box, I consent to being contacted at this cellular number |

## SECTION 2: RESOLUTION PLAN (REQUIRED)

**I want to: (Please check the option that applies)**

☐ Keep the property – Retaining the property requires bringing the account current through one of several options. The account will be evaluated for all eligible options from the list below:

A *modification* which includes adding the past due interest and other advances to the unpaid principal balance and adjusting the account terms and/or payment amount,

A *payment deferral* which brings the account current by deferring the payment of past due principal and interest amounts until the account is paid off or matures,

A *repayment plan* which brings the account current by adding a portion of the past due amount to the monthly payment for a period of up to 12 months, or

An *unemployment forbearance plan* which requires monthly payments based on a percentage of the monthly benefit amount being received for a period of up to 6 months followed by either a reinstatement of the account or evaluation for other home retention options.

☐ Sell the Property – Selling the property for less than the payoff amount is commonly referred to as a Short Sale. If you do not currently have an offer to purchase the property, you may be evaluated for a 60 day forbearance period in order to provide time to list the property and receive an offer.

☐ Negotiate the Payoff – Paying off the account, through a refinance or other funds, for less than the payoff amount due is commonly referred to as a Short Payoff.

☐ Surrender the property – Relinquishing the property and signing the deed to the owner of the account is commonly referred to as a Deed-in-Lieu of Foreclosure.

## SECTION 3: HARDSHIP EXPLANATION (REQUIRED)

**REQUIRED: Explanation of hardship. Please provide details and dates. (Continue on a separate sheet of paper if necessary. Please indicate "See Attached" in the space below if utilizing additional pages):**



079

| SECTION 4: EMPLOYMENT/INCOME STATUS (REQUIRED) | | |
|---|---|---|

Please check the status that applies:

| At least one borrower is unemployed and receiving/will receive unemployment benefits<br>**A copy of your most recent unemployment benefits statement must be submitted with this document** | ☐ Yes ☐ No |
|---|---|

## SECTION 5: BORROWER AND CO-BORROWER ACKNOWLEDGEMENT AND AGREEMENT (REQUIRED)

1. I certify that all of the information in this RMA is truthful and the hardship(s) identified above has/have contributed to submission of this request for mortgage assistance.
2. I certify that my cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time.
3. I certify that I am willing to provide all requested documents and to respond to all Servicer communications in a timely manner. I understand that time is of the essence.
4. I understand that the Servicer will use the information I provide to evaluate my eligibility for available relief options and foreclosure alternatives, but the Servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with my request.
5. I understand that there may be tax implications for some assistance programs; and if approved for an assistance program, I will consult a tax advisor if I have questions about how completing the program may impact my taxable income.
6. I understand that my account will be reported to the credit reporting agencies to reflect any accepted and completed assistance program.

_____          _____
Borrower Signature                                         Date

_____          _____
Co-Borrower Signature                                    Date

_____
SPS Account Number

*If you have questions about this document please call your servicer.*

*If you need financial counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673).*

*The Hotline offers free HUD certified counseling services in English and Spanish.*



| NOTICE TO BORROWERS |
|---|

### Beware of Foreclosure Rescue Scams. Help is FREE!

- There is never a fee to get assistance or information about Foreclosure Prevention Programs from your lender.
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent account.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

Form **4506-T**

(July 2017)
Department of the Treasury
Internal Revenue Service

## Request for Transcript of Tax Return

▶ **Do not sign this form unless all applicable lines have been completed.**

▶ **Request may be rejected if the form is incomplete or illegible.**

▶ **For more information about Form 4506-T, visit** *www.irs.gov/form4506t.*

OMB No. 1545-1872

**Tip.** Use Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." under "Tools" or call 1-800-908-9946. If you need a copy of your return, use **Form 4506, Request for Copy of Tax Return.** There is a fee to get a copy of your return.

| | |
|---|---|
| **1a** Name shown on tax return. If a joint return, enter the name shown first. | **1b** First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions) |
| **2a** If a joint return, enter spouse's name shown on tax return. | **2b** Second social security number or individual taxpayer identification number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

**4** Previous address shown on the last return filed if different from line 3 (see instructions)

**5** If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

Select Portfolio Servicing, Inc., PO Box 65250, Salt Lake City, UT 84165-0250, 888-818-6032

**Caution:** If the tax transcript is being mailed to a third party, ensure that you have filled in lines 6 through 9 before signing. Sign and date the form once you have filled in these lines. Completing these steps helps to protect your privacy. Once the IRS discloses your tax transcript to the third party listed on line 5, the IRS has no control over what the third party does with the information. If you would like to limit the third party's authority to disclose your transcript information, you can specify this limitation in your written agreement with the third party.

**6** **Transcript requested.** Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. ▶ ___1040___

**a** **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. A tax return transcript does not reflect changes made to the account after the return is processed. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120-A, Form 1120-H, Form 1120-L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. Most requests will be processed within 10 business days . . . . . . ☐

**b** **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns. Most requests will be processed within 10 business days . ☐

**c** **Record of Account,** which provides the most detailed information as it is a combination of the Return Transcript and the Account Transcript. Available for current year and 3 prior tax years. Most requests will be processed within 10 business days . . . . . . ☐

**7** **Verification of Nonfiling,** which is proof from the IRS that you **did not** file a return for the year. Current year requests are only available after June 15th. There are no availability restrictions on prior year requests. Most requests will be processed within 10 business days . ☐

**8** **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2011, filed in 2012, will likely not be available from the IRS until 2013. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213. Most requests will be processed within 10 business days . ☐

**Caution:** If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

**9** **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T. For requests relating to quarterly tax returns, such as Form 941, you must enter each quarter or tax period separately.

| 12 / 31 / 2017 | 12 / 31 / 2016 | 12 / 31 / 2015 | / / |
|---|---|---|---|

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer. **Note:** This form must be received by IRS within 120 days of the signature date.

☐ **Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506-T.** See instructions.

Phone number of taxpayer on line 1a or 2a

**Sign Here**

| Signature (see instructions) | Date |
|---|---|
| Title (if line 1a above is a corporation, partnership, estate, or trust) | |
| Spouse's signature | Date |

**For Privacy Act and Paperwork Reduction Act Notice, see page 2.**    Cat. No. 37667N    Form **4506-T** (Rev. 7-2017)



081

Form 4506-T (Rev. 7-2017)

Section references are to the Internal Revenue Code unless otherwise noted.

## Future Developments

For the latest information about Form 4506-T and its instructions, go to *www.irs.gov/form4506t.* Information about any recent developments affecting Form 4506-T (such as legislation enacted after we released it) will be posted on that page.

## General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate (on line 5) a third party to receive the information. Taxpayers using a tax year beginning in one calendar year and ending in the following year (fiscal tax year) must file Form 4506-T to request a return transcript.

**Note:** If you are unsure of which type of transcript you need, request the Record of Account, as it provides the most detailed information.

**Tip.** Use Form 4506, Request for Copy of Tax Return, to request copies of tax returns.

**Automated transcript request.** You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." under "Tools" or call 1-800-908-9946.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series and Form W-2) and one for all other transcripts.

If you are requesting more than one transcript or other product and the chart below shows two different addresses, send your request to the address based on the address of your most recent return.

## Chart for individual transcripts (Form 1040 series and Form W-2 and Form 1099)

| If you filed an individual return and lived in: | Mail or fax to: |
|---|---|
| Alabama, Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team Stop 6716 AUSC Austin, TX 73301  855-587-9604 |
| Alaska, Arizona, Arkansas, California, Colorado, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | Internal Revenue Service RAIVS Team Stop 37106 Fresno, CA 93888  855-800-8105 |
| Connecticut, Delaware, District of Columbia, Florida, Georgia, Maine, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia | Internal Revenue Service RAIVS Team Stop 6705 P-6 Kansas City, MO 64999  855-821-0094 |

## Chart for all other transcripts

| If you lived in or your business was in: | Mail or fax to: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Texas, Utah, Washington, Wyoming, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409  855-298-1145 |
| Connecticut, Delaware, District of Columbia, Georgia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, West Virginia, Wisconsin | Internal Revenue Service RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250  855-800-8015 |

**Line 1b.** Enter your employer identification number (EIN) if your request relates to a business return. Otherwise, enter the first social security number (SSN) or your individual taxpayer identification number (ITIN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 3.** Enter your current address. If you use a P.O. box, include it on this line.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address. For a business address, file Form 8822-B, Change of Address or Responsible Party — Business.

**Line 6.** Enter only one tax form number per request.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506-T within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines are completed before signing.



You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed and returned to you if the box is unchecked.

**Individuals.** Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506-T but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 9.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506-T for a taxpayer only if the taxpayer has specifically delegated this authority to the representative on Form 2848, line 5. The representative must attach Form 2848 showing the delegation to Form 4506-T.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. You are not required to request any transcript; if you do request a transcript, sections 6103 and 6109 and their regulations require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 12 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

Do not send the form to this address. Instead, see *Where to file* on this page.

**Recording Requested By:**
Richmond Monroe Group

**When Recorded Mail To:**
Jeff Prose
Richmond Monroe Group
82 Jim Linegar Ln
Branson West, MO, 65737
(417) 447-2931

TS Ref #: 0009220000018470

*** Electronic Recording ***
Doc#:  00091676
Bk: 51857 Pg: 330 Page: 1 of 1
Recorded:  10/29/2019 08:40 AM
ATTEST: John R. Buckley, Jr. Register
Plymouth County Registry of Deeds

ℓℓℓ

**CORPORATE ASSIGNMENT OF MORTGAGE**

MA/PLYMOUTH
Assignment Prepared on: August 30, 2019

**Assignor:** BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NA AS TRUSTEE FOR WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WAMU SERIES 2007-OA4 TRUST BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

**Assignee:** U.S. BANK NA, SUCCESSOR TRUSTEE TO BANK OF AMERICA, NA, SUCCESSOR IN INTEREST TO LASALLE BANK NA, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE WAMU MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA4, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 3/26/2007, in the amount of $960,000.00, executed by FRANCIS J SAMPSON JR. to WASHINGTON MUTUAL BANK, FA and Recorded: 3/30/2007, Instrument #: 32233, Book / Liber / Reel: 34311, Page / Image / Folio: 304 in PLYMOUTH County, State of Massachusetts.

Property Address: 85 HERITAGE LANE, DUXBURY, MA, 02332

The undersigned, affirms that to the best of his/her knowledge, that no mortgage broker or mortgage loan originator was involved in the mortgage.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NA AS TRUSTEE FOR WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WAMU SERIES 2007-OA4 TRUST BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT

On:  SEP 2 6 2019                    POA TO BE RECORDED
                                     CONCURRENTLY

By:
Name:                    Curtis Chapa
Title:              Document Control Officer

State of UTAH
County of SALT LAKE

On  SEP 2 6 2019        , before me,    Lacee Blanchfield        , a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared  Curtis Chapa  Vice President, BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NA AS TRUSTEE FOR WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WAMU SERIES 2007-OA4 TRUST BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

▲ Document Control Officer

WITNESS my hand and official seal.

_____
Lacee Blanchfield           / #: 092617
Notary Expires:  DEC 2 0 2020

MA/PLYMOUTH

LACEE BLANCHFIELD
Notary Public State of Utah
My Commission Expires on:
December 20, 2020
Comm. Number: 692617


EXHIBIT
**F**
083

85 HERITAGE LANE, DUXBURY, MA, 02332

**CERTIFICATION PURSUANT TO 209 CMR 18.21 A(2)(c)**

Borrower Name(s): Francis J. Sampson, Jr.
Property Address: 85 Heritage Lane, Duxbury, MA 02332
Mortgage: Francis J. Sampson, Jr. to Washington Mutual Bank, F.A., dated March 26, 2007, and recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304.
Foreclosing Mortgagee: U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4

1. I am an officer of Select Portfolio Servicing, Inc. ("SPS"), attorney-in-fact and mortgage servicer for U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4.

2. Based upon my review of SPS's business records, which include copies of executed mortgage documents and recorded assignments of mortgage, I hereby certify that:

   a) The above-referenced mortgage has been assigned as follows:

| Assignment Date | Name of Assignor | Name of Assignee |
|---|---|---|
| May 14, 2010 | JPMorgan Chase Bank, National Association, Successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank F.A. | Bank of America, National Association as successor by merger to Lasalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 2007-OA4 |
| September 26, 2019 | Bank of America, National Association as successor by merger to Lasalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 2007-OA4 | U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 |
| | | |

   b) On this date, U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-

084

Through Certificates, Series 2007-OA4 is the owner of the promissory note secured by the above-referenced mortgage.

c) U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 has the right to foreclose because the above-referenced mortgage is in default, and U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 is the holder of the mortgage and the holder of the note.

A true and correct copy of the above-referenced note with any endorsements and/or allonges is included with this Certification.

See Limited Power of Attorney

Plymouth Country Registry of Deeds

Recorded at Book 49326, Page 308

By: _____

Name: __Alyssa Sanders__

Title: __Document Control Officer__
Select Portfolio Servicing, Inc.
Date: __Nov 2, 2021__

*** Electronic Recording ***
Doc#:  00130329
**Bk: 56035 Pg: 183 Page: 1 of 3**
Recorded:  11/18/2021 11:04 AM
ATTEST: John R. Buckley, Jr. Register
Plymouth County Registry of Deeds

---

## Affidavit Pursuant to M.G.L. Chapter 244 Sections 35B and 35C

Property Address: 85 Heritage Lane, Duxbury, MA 02332

Mortgage: Francis J. Sampson, Jr. to Washington Mutual Bank, F.A., dated March 26, 2007, and recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304

Assigned to: Bank of America, National Association as successor by merger to Lasalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 2007-OA4 Trust on May 14, 2010 and recorded in Book 38565, Page 100; and further assigned to U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 on September 26, 2019 and recorded in Book 51857, Page 330.

Foreclosing Mortgagee: U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4

The undersigned, _____**Alyssa Sanders**_____, having personal knowledge of the facts herein stated, under oath deposes and states as follows:

1. I am a _____**Document Control Officer**_____ of Select Portfolio Servicing, Inc. ("SPS"), attorney-in-fact and duly authorized agent for U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4, the Foreclosing Mortgagee.

2. As a mortgage servicer, SPS collects payments from borrowers and maintains up-to-date electronic records concerning the loans it services in its electronic record-keeping system. I have access to SPS's business records, including the business records for and relating to the

EXHIBIT
**H**

086

1

subject loan. I make this affidavit based upon my review of those records relating to the Borrower(s)'s loan and from my own personal knowledge of how the records are kept and maintained. The loan records are maintained by SPS in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with personal knowledge. It is the regular practice to keep such records in the ordinary course of a regularly conducted business activity.

3. To the extent that the business records of the loan in this matter were created by a prior servicer, the prior servicer's records for the loan were integrated and boarded into SPS's systems, such that the prior servicer's records concerning the loan are now part of SPS's business records. SPS maintains quality control and verification procedures as part of the boarding process to ensure the accuracy of the boarded records. It is the regular practice of SPS to integrate prior servicers' records into SPS's business records, and to rely upon the accuracy of those boarded records in providing its loan servicing functions. These prior servicer records are integrated and relied upon by SPS as part of SPS's business records.

4. Based upon my review of SPS's business records, I certify that:

   a. ☑ The requirements of M.G.L. Chapter 244 Section 35B have been complied with.

   ☐ M.G.L. Chapter 244 Section 35B is not applicable to the above-referenced mortgage.

   b. On this date, U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 is:

   ☑ the holder of the promissory note secured by the above-referenced mortgage.

   ☐ the authorized agent of the holder of the promissory note secured by the above-referenced mortgage.

Signed under the pains and penalties of perjury this _2_ day of _November_, 2021.

By: _____

See Limited Power of Attorney

Plymouth Country Registry of Deeds

Recorded at Book 49326, Page _308_

Name: __Alyssa Sanders__

Title: __Document Control Officer__

Select Portfolio Servicing, Inc.

Date: _NOV 2 2021_

STATE OF UTAH            )

COUNTY OF SALT LAKE   )

Subscribed before me on this _02_ day of _November_____, in the year 20 _21_ by

_Alyssa Sanders_____ Personally Known , a _Document Control Officer_____ of Select Portfolio Servicing, Inc., proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his/her knowledge and belief. Witness my hand and official seal.

_____
Notary Public

CYNTHIA MAY
Notary Public  State of Utah
My Commission Expires on:
April 27, 2025
Comm. Number: 712319

## NOTICE OF MORTGAGEE'S SALE OF REAL ESTATE

By virtue and in execution of the Power of Sale contained in a certain mortgage given by Francis J. Sampson, Jr. to Washington Mutual Bank, FA dated March 26, 2007, recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304; said mortgage was then assigned to Bank of America, National Association as successor by merger to Lasalle Bank NA as trustee for Washington Mutual

Mortgage Pass-Through Certificates, WaMu Series 200-OA4 Trust by virtue of an assignment dated May 14, 2010, and recorded in Book 38565, Page 100; and further assigned to U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 by virtue of an assignment dated September 26, 2019, and recorded in Book 51857, Page 330; of which mortgage the undersigned is the present holder for breach of conditions of said mortgage and for the purpose of foreclosing the same will be sold at PUBLIC AUCTION at 12:00 PM on March 23, 2022, on the mortgaged premises. This property has the address of 85 Heritage Lane, Duxbury, MA 02332. The entire mortgaged premises, all and singular, the premises as described in said mortgage:

The land in Duxbury, Plymouth County, Massachusetts, on Heritage Lane (a way off the westerly side of Tremont Street) being shown as Lot 5 on a plan entitled, "Subdivision Plan of Land In Duxbury, Mass., Belonging to Catherine Realty Trust", dated June 20, 1969, by Delano & Keith, Inc., recorded with Plymouth Registry of Deeds as Plan No. 209 of 1971, Plan Book 15, Page 964, reference to which plan is more particular description of said lot. Being the same premises conveyed to this mortgagor by deed of Francis J. Sampson, Jr., Trustee of J and G Realty Trust dated May 23, 2003 recorded with the Plymouth County Registry of Deeds in Book 25297, Page 236.

Subject to and with the benefit of easements, reservation, restrictions, and taking of record, if any, insofar as the same are now in force and applicable. In the event of any typographical error set forth herein in the legal description of the premises,

the description as set forth and contained in the mortgage shall control by reference. Together with all the improvements now or hereafter erected on the property and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this sale.

Terms of Sale: Said premises will be sold subject to any and all unpaid taxes and assessments, tax sales, tax titles and other municipal liens and water or sewer liens and State or County transfer fees, if any there are, and TEN THOUSAND DOLLARS

($10,000.00) in cashier's or certified check will be required to be paid by the purchaser at the time and place of the sale as a deposit and the balance in cashier's or certified check will be due in thirty (30) days, at the offices of Doonan, Graves & Longoria, LLC ("DG&L"), time being of the essence. The Mortgagee reserves the right to postpone the sale to a later date by public proclamation at the time and date appointed for the sale and to further postpone at any adjourned sale-date by public proclamation at the time and date appointed for the adjourned sale date. The premises is to be sold subject to and with the benefit of all easements, restrictions, leases, tenancies, and rights of possession, building and zoning laws, encumbrances, condominium liens, if any and all other claim in the nature of liens, if any there be.

In the event that the successful bidder at the foreclosure sale shall default in purchasing the within described property according to the terms of this Notice of Sale and/or the terms of the Memorandum of Sale executed at the time of foreclosure, the Mortgagee reserves the right to sell the property by foreclosure deed to the second highest bidder, providing that said second highest bidder shall deposit with the Mortgagee's attorneys, the amount of the required deposit as set forth herein. If the second highest bidder declines to purchase the within described property, the Mortgagee reserves the right to purchase the within described property at the amount bid by the second highest bidder. The foreclosure deed and the consideration paid by the successful bidder shall be held in escrow by DG&L, (hereinafter called the "Escrow Agent") until the deed shall be released from escrow to the successful bidder at the same time as the consideration is released to the Mortgagee, whereupon

**EXHIBIT**

08?

all obligations of the Escrow Agent shall be deemed to have been properly fulfilled and the Escrow Agent shall be discharged. Other terms, if any, to be announced at the sale.

U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4

By its Attorney DOONAN, GRAVES & LONGORIA, LLC, 100 Cummings Center, Suite 303C, Beverly, MA 01915 (978) 921-2670 www.dgandl.com 4012.82 (SAMPSON)

JD- 02/23, 03/02, 03/09, 2022

## AFFIDAVIT

85 Heritage Lane, Duxbury, MA 02332

I, Paula Bouchard, of Doonan, Graves & Longoria, LLC, a Massachusetts Law Firm with a usual place of business at 100 Cummings Center, Suite 303C, Beverly, MA 01915, do hereby certify on behalf of Doonan, Graves & Longoria, LLC that notice was made in compliance with M.G.L, Chapter 244, Sections 14 and 17B to all interested parties including **Francis J. Sampson, Jr., Spouse of Francis J. Sampson Jr, Town of Duxbury, Washington Mutual Bank, FA,** of a certain mortgage given by Francis J. Sampson, Jr. to Washington Mutual Bank, F.A. dated March 26, 2007 and recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304. All notices and related copies of the Notice of Mortgagee's Sale and Intent to Pursue Deficiency After Mortgage Foreclosure, were prepared and deposited via first-class U.S. Mail and U.S. Certified Mail on _____2/24_____, 2022 in compliance with said M.G.L., Chapter 244, Sections 14 and 17B.

_____
Witness

_____
Paula Bouchard

Commonwealth of Massachusetts

County of Essex

Before me, a notary public, on this ___24th___ day of ___February___ 2022, personally appeared Paula Bouchard, known to me to be the person whose name is subscribed to the foregoing document and being by me first duly sworn, declared that the statements therein contained are true and accurate.

_____
Notary Public
My Commission Expires:

MICHELE B. DIRUZZA
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
September 9, 2022

EXHIBIT
J

091



DOONAN, GRAVES & LONGORIA, LLC
ATTORNEYS AT LAW

*Serving Massachusetts, Maine*
*& New Hampshire*
*Hours: Monday - Friday 9 am - 4 pm*
*www.dgandl.com*

*100 Cummings Center, Suite 303C*
*Beverly, Massachusetts 01915*
*TEL: (978) 921-2670*
*FAX: (978) 921-4870*

## NOTICE OF INTENT TO FORECLOSE MORTGAGE AND INTENT TO PURSUE DEFICIENCY AFTER FORECLOSURE OF MORTGAGE

February 24, 2022

Francis J. Sampson, Jr.
85 Heritage Lane
Duxbury, MA 02332

VIA CERTIFIED MAIL

RE:    85 Heritage Lane, Duxbury, MA 02332

You are hereby notified, pursuant to Massachusetts General Laws, Chapter 244, §14, of the intention of U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4, on or after March 23, 2022 at 12:00 PM to foreclose by sale, under the power of sale for breach of conditions, the mortgage given by Francis J. Sampson, Jr. to Washington Mutual Bank, F.A. dated March 26, 2007 and recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304, to secure a note of the same date given by you, for the whole or part, of which you may be liable to the aforesaid Lender in case of a deficiency in the proceeds of the foreclosure sale.

Very truly yours,
U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4

by:_____
Reneau J. Longoria, Esq., Bar No. 635118
Brian C. Linehan, Esq., Bar No. 690437
Attorney for Plaintiff
Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 303C
Beverly, MA 01915
(978) 921-2670

Refer to the Auctioneer's Website: http://www.monroeauctiongroup.com
*No deficiency after the foreclosure sale may be pursued if you have obtained or will obtain a Chapter 7 bankruptcy discharge that covers your obligation under the note secured by the mortgage referred to above. Please be advised that this is not an attempt to collect a debt but is required pursuant to Massachusetts General Laws, Chapter 244, §14, to foreclose the mortgage lien*
*Enclosures: Notice of Mortgagee's Sale*

## NOTICE OF MORTGAGEE'S SALE OF REAL ESTATE

By virtue and in execution of the Power of Sale contained in a certain mortgage given by **Francis J. Sampson, Jr.** to Washington Mutual Bank, FA dated March 26, 2007, recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304; said mortgage was then assigned to Bank of America, National Association as successor by merger to Lasalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 200-OA4 Trust by virtue of an assignment dated May 14, 2010, and recorded in Book 38565, Page 100; and further assigned to U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 by virtue of an assignment dated September 26, 2019, and recorded in Book 51857, Page 330; of which mortgage the undersigned is the present holder for breach of conditions of said mortgage and for the purpose of foreclosing the same will be sold at PUBLIC AUCTION at 12:00 PM on **March 23, 2022**, on the mortgaged premises. This property has the address of 85 Heritage Lane, Duxbury, MA 02332. The entire mortgaged premises, all and singular, the premises as described in said mortgage:

The land in Duxbury, Plymouth County, Massachusetts, on Heritage Lane (a way off the westerly side of Tremont Street) being shown as Lot 5 on a plan entitled, "Subdivision Plan of Land In Duxbury, Mass., Belonging to Catherine Realty Trust", dated June 20, 1969, by Delano & Keith, Inc., recorded with Plymouth Registry of Deeds as Plan No. 209 of 1971, Plan Book 15, Page 964, reference to which plan is more particular description of said lot. Being the same premises conveyed to this mortgagor by deed of Francis J. Sampson, Jr., Trustee of J and G Realty Trust dated May 23, 2003 recorded with the Plymouth County Registry of Deeds in Book 25297, Page 236.

Subject to and with the benefit of easements, reservation, restrictions, and taking of record, if any, insofar as the same are now in force and applicable. In the event of any typographical error set forth herein in the legal description of the premises, the description as set forth and contained in the mortgage shall control by reference. Together with all the improvements now or hereafter erected on the property and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this sale.

**Terms of Sale:**  Said premises will be sold subject to any and all unpaid taxes and assessments, tax sales, tax titles and other municipal liens and water or sewer liens and State or County transfer fees, if any there are, and TEN THOUSAND DOLLARS ($10,000.00) in cashier's or certified check will be required to be paid by the purchaser at the time and place of the sale as a deposit and the balance in cashier's or certified check will be due in thirty (30) days, at the offices of Doonan, Graves & Longoria, LLC ("DG&L"), time being of the essence. The Mortgagee reserves the right to postpone the sale to a later date by public proclamation at the time and date appointed for the sale and to further postpone at any adjourned sale-date by public proclamation at the time and date appointed for the adjourned sale date. The premises is to be sold subject to and with the benefit of all easements, restrictions, leases, tenancies, and rights of possession, building and zoning laws, encumbrances, condominium liens, if any and all other claim in the nature of liens, if any there be.

In the event that the successful bidder at the foreclosure sale shall default in purchasing the within described property according to the terms of this Notice of Sale and/or the terms of the Memorandum of Sale executed at the time of foreclosure, the Mortgagee reserves the right to sell the property by foreclosure deed to the second highest bidder, providing that said second highest bidder shall deposit with the Mortgagee's attorneys, the amount of the required deposit as set forth herein. If the second highest bidder declines to purchase the within described property, the Mortgagee reserves the right to purchase the within described property at the amount bid by the second highest bidder. The foreclosure deed and the consideration paid by the successful bidder shall be held in escrow by DG&L, (hereinafter called the "Escrow Agent") until the deed shall be released from escrow to the successful bidder at the same time as the consideration is released to the Mortgagee, whereupon all obligations of the Escrow Agent shall be deemed to have been properly fulfilled and the Escrow Agent shall be discharged. Other terms, if any, to be announced at the sale.

U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 By its Attorney DOONAN, GRAVES & LONGORIA, LLC, 100 Cummings Center, Suite 303C, Beverly, MA 01915 (978) 921-2670 www.dgandl.com 4012.82 (SAMPSON) 2/23/2022, 3/02/2022, 3/09/2022

<u>**CERTIFICATION PURSUANT TO 209 CMR 18.21 A(2)(c)**</u>

Borrower Name(s): Francis J. Sampson, Jr.
Property Address: 85 Heritage Lane, Duxbury, MA 02332
Mortgage: Francis J. Sampson, Jr. to Washington Mutual Bank, F.A., dated March 26, 2007, and
recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304.
Foreclosing Mortgagee: U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest
to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through
Certificates, Series 2007-OA4

1. I am an officer of Select Portfolio Servicing, Inc. ("SPS"), attorney-in-fact and mortgage
   servicer for U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to
   LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through
   Certificates, Series 2007-OA4.
2. Based upon my review of SPS's business records, which include copies of executed mortgage
   documents and recorded assignments of mortgage, I hereby certify that:
   a) The above-referenced mortgage has been assigned as follows:

| Assignment Date | Name of Assignor | Name of Assignee |
| --- | --- | --- |
| May 14, 2010 | JPMorgan Chase Bank, National Association, Successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank F.A. | Bank of America, National Association as successor by merger to Lasalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 2007-OA4 |
| September 26, 2019 | Bank of America, National Association as successor by merger to Lasalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 2007-OA4 | U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 |
| | | |

   b) On this date, U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest
      to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-

Through Certificates, Series 2007-OA4 is the owner of the promissory note secured by the above-referenced mortgage.

c) U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 has the right to foreclose because the above-referenced mortgage is in default, and U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 is the holder of the mortgage and the holder of the note.

A true and correct copy of the above-referenced note with any endorsements and/or allonges is included with this Certification.

See Limited Power of Attorney

Plymouth Country Registry of Deeds

Recorded at Book 49326, Page 308

By: _____

Name: _____ Alyssa Sanders _____

Title: _____ Document Control Officer _____

Select Portfolio Servicing, Inc.

Date: NOV 2, 2021

MA004.N003

39US
M39



### ADJUSTABLE RATE NOTE
(12-MTA Index - Payment and Rate Caps)

3013482820

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN ___115%___ OF THE ORIGINAL AMOUNT (OR $_____1,104,000.00___). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

__MARCH 26, 2007__        __FALL RIVER_____, __MASSACHUSETTS__
                              CITY                      STATE

__85 HERITAGE LANE, DUXBURY, MA  02332__
                PROPERTY ADDRESS

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $_____960,000.00_____ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is __WASHINGTON MUTUAL BANK, FA_____. I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2. INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid. Up until the first day of the calendar month that immediately precedes the first payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of __7.961 %. Thereafter until the first Change Date (as defined in Section 4 of this Note) I will pay interest at a yearly rate of __1.250 %. The interest rate required by this Section 2 and Section 4 of this Note is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay Principal and interest by making payments every month. In this Note, "payments" refer to Principal and interest payments only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I will make my monthly payments on __1ST__ day of each month beginning on __MAY, 2007_____. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on __APRIL 01, 2037_____, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at __P.O. BOX 78148 PHOENIX, AZ 85062-8148_____, or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $__3,199.22__, unless adjusted at an earlier time under Section 4(H) of this Note.

32859 (11-01)                    Page 1 of 6                    LNT60USA (VERSION 1.0)

097

Bk: 3856   Pg: 100



2010 00041470
Bk: 38566Pg: 100 Page: 1 of 1
Recorded: 05/27/2010 11:47 AM



ATTEST: *John R Buckley Jr.*
REGISTER,
PLYMOUTH COUNTY REGISTRY OF DEEDS

# ASSIGNMENT OF MORTGAGE

JPMorgan Chase Bank, National Association, Successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank F.A., holder of a real estate mortgage

from Francis J. Sampson, Jr.

to Washington Mutual Bank F.A.

dated March 26, 2007

recorded in the Plymouth County Registry of Deeds in Book 34311, Page 304

assigns without recourse in any event said mortgage and the note and claim secured thereby to Bank of America, National Association as successor by merger to LaSalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 2007-OA4 Trust to JPMorgan Chase Bank, National Association, 7255 Baymeadows Way, Mailcode JAXA 2035, Jacksonville, FL 32556.

*IN WITNESS WHEREOF*, the said JPMorgan Chase Bank, National Association, Successor in interest from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank F.A. has caused its corporate seal to be affixed and these presents to be signed in its name and behalf by ___Margaret Dalton___ its _____

_____Vice President_____ this _____ 14 day of
_____May_____ , A.D. 2010.

Signed and sealed in the presence.   JP Morgan Chase Bank, National Association, Successor in
See Affidavit of FDIC for purchase    interest from the Federal Deposit Insurance Corporation,
of assets of Washington Mutual       as Receiver for Washington Mutual Bank f/k/a Washington
Bank filed in the Plymouth            Mutual Bank, F.A.
County Registry District of the
Land Court as Document #642423       By _____
                                     Name: ___Margaret Dalton___
                                     Title: ___Vice President___

STATE OF ___Florida___

___Duval___ , S.S.        ___14 May___ , 2010
                          Margaret Dalton

Then personally appeared the above named
___Vice President___ , and acknowledged the foregoing instrument to be the free act and deed of
JPMorgan Chase Bank, National Association, Successor in interest from the Federal Deposit Insurance
Corporation, as Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank F.A., before me,

Notary Public: _____
My Commission Expires: _____

FLORINA C. MUNOZ
Notary Public - State of Florida
My Comm. Expires Feb 23, 2014
Commission # DD 958530

Stanton & Davis
1000 Plain Street
Marshfield, MA 02050

ETP   2/23/2012
Florine C Munoz

098

Property Address:   85 Heritage Lane, Duxbury, Massachusetts

Recording Requested By:
Richmond Monroe Group

When Recorded Mail To:
Jeff Prose
Richmond Monroe Group
82 Jim Linegar Ln
Branson West, MO, 65737
(417) 447-2931

*** Electronic Recording ***
Doc#:    00091676
Bk: 51857 Pg: 330 Page: 1 of 1
Recorded: 10/29/2019 08:40 AM
ATTEST: John R. Buckley, Jr. Register
Plymouth County Registry of Deeds

TS Ref #: 0009220000018470

**CORPORATE ASSIGNMENT OF MORTGAGE**

MA/PLYMOUTH
Assignment Prepared on: August 30, 2019

Assignor: BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NA AS TRUSTEE FOR WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WAMU SERIES 2007-OA4 TRUST BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

Assignee: U.S. BANK NA, SUCCESSOR TRUSTEE TO BANK OF AMERICA, NA, SUCCESSOR IN INTEREST TO LASALLE BANK NA, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE WAMU MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA4, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 3/26/2007, in the amount of $560,000.00, executed by FRANCIS J SAMPSON JR to WASHINGTON MUTUAL BANK, FA and Recorded: 3/30/2007, Instrument #: 32233, Book / Liber / Reel: 34311, Page / Image / Folio: 304 in PLYMOUTH County, State of Massachusetts.

Property Address: 85 HERITAGE LANE, DUXBURY, MA, 02332

The undersigned, affirms that to the best of his/her knowledge, that no mortgage broker or mortgage loan originator was involved in the mortgage.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NA AS TRUSTEE FOR WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WAMU SERIES 2007-OA4 TRUST BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT

On:  SEP 2 6 2019

POA TO BE RECORDED
CONCURRENTLY

By:
Name:    Curtis Chapa
Title:    Document Control Officer

State of UTAH
County of SALT LAKE

On    SEP 2 6 2019    , before me,    Lacee Blanchfield    , a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared   Curtis Chapa   Vice President, BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NA AS TRUSTEE FOR WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WAMU SERIES 2007-OA4 TRUST BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT, personally known to me or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

A Document Control Officer

WITNESS my hand and official seal.

Lacee Blanchfield
Notary Expires:    DEC 2 0 2020

LACEE BLANCHFIELD
Notary Public, State of Utah
My Commiss on Expires on
December 20, 2020
Comm. Number: 692617

MA/PLYMOUTH

# DOONAN, GRAVES & LONGORIA, LLC
## ATTORNEYS AT LAW

Serving Massachusetts, Maine
& New Hampshire
Hours: Monday - Friday 9 am - 4 pm
www.dgandl.com

100 Cummings Center, Suite 303C
Beverly, Massachusetts 01915
TEL: (978) 921-2670
FAX: (978) 921-4870

## NOTICE OF INTENT TO FORECLOSE MORTGAGE

February 24, 2022

Spouse of Francis J. Sampson Jr
85 Heritage Lane
Duxbury, MA 02332

VIA CERTIFIED MAIL

Re:    85 Heritage Lane, Duxbury, MA 02332

To Whom It May Concern:

You are hereby notified, pursuant to Massachusetts General Laws, Chapter 244, §14, of the intention of U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4, on or after March 23, 2022 at 12:00 PM, to foreclose by sale, under the power of sale for breach of conditions, the mortgage given by Francis J. Sampson, Jr. to Washington Mutual Bank, F.A. dated March 26, 2007 and recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304.

Very truly yours,
U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4
by its attorneys
Doonan, Graves & Longoria, LLC

by: _____
Reneau J. Longoria, Esq.
Brian C. Linehan, Esq.

4012.82
*Refer to the Auctioneer's Website:  http://www.monroeauctiongroup.com*
*Enclosures:  Notice of Mortgagee's Sale*

## NOTICE OF MORTGAGEE'S SALE OF REAL ESTATE

By virtue and in execution of the Power of Sale contained in a certain mortgage given by **Francis J. Sampson, Jr.** to Washington Mutual Bank, FA dated March 26, 2007, recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304; said mortgage was then assigned to Bank of America, National Association as successor by merger to Lasalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 200-OA4 Trust by virtue of an assignment dated May 14, 2010, and recorded in Book 38565, Page 100; and further assigned to U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 by virtue of an assignment dated September 26, 2019, and recorded in Book 51857, Page 330; of which mortgage the undersigned is the present holder for breach of conditions of said mortgage and for the purpose of foreclosing the same will be sold at PUBLIC AUCTION at 12:00 PM on **March 23, 2022**, on the mortgaged premises. This property has the address of 85 Heritage Lane, Duxbury, MA 02332. The entire mortgaged premises, all and singular, the premises as described in said mortgage:

> The land in Duxbury, Plymouth County, Massachusetts, on Heritage Lane (a way off the westerly side of Tremont Street) being shown as Lot 5 on a plan entitled, "Subdivision Plan of Land In Duxbury, Mass., Belonging to Catherine Realty Trust", dated June 20, 1969, by Delano & Keith, Inc., recorded with Plymouth Registry of Deeds as Plan No. 209 of 1971, Plan Book 15, Page 964, reference to which plan is more particular description of said lot. Being the same premises conveyed to this mortgagor by deed of Francis J. Sampson, Jr., Trustee of J and G Realty Trust dated May 23, 2003 recorded with the Plymouth County Registry of Deeds in Book 25297, Page 236.

Subject to and with the benefit of easements, reservation, restrictions, and taking of record, if any, insofar as the same are now in force and applicable. In the event of any typographical error set forth herein in the legal description of the premises, the description as set forth and contained in the mortgage shall control by reference. Together with all the improvements now or hereafter erected on the property and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this sale.

**Terms of Sale:** Said premises will be sold subject to any and all unpaid taxes and assessments, tax sales, tax titles and other municipal liens and water or sewer liens and State or County transfer fees, if any there are, and TEN THOUSAND DOLLARS ($10,000.00) in cashier's or certified check will be required to be paid by the purchaser at the time and place of the sale as a deposit and the balance in cashier's or certified check will be due in thirty (30) days, at the offices of Doonan, Graves & Longoria, LLC ("DG&L"), time being of the essence. The Mortgagee reserves the right to postpone the sale to a later date by public proclamation at the time and date appointed for the sale and to further postpone at any adjourned sale-date by public proclamation at the time and date appointed for the adjourned sale date. The premises is to be sold subject to and with the benefit of all easements, restrictions, leases, tenancies, and rights of possession, building and zoning laws, encumbrances, condominium liens, if any and all other claim in the nature of liens, if any there be.

In the event that the successful bidder at the foreclosure sale shall default in purchasing the within described property according to the terms of this Notice of Sale and/or the terms of the Memorandum of Sale executed at the time of foreclosure, the Mortgagee reserves the right to sell the property by foreclosure deed to the second highest bidder, providing that said second highest bidder shall deposit with the Mortgagee's attorneys, the amount of the required deposit as set forth herein. If the second highest bidder declines to purchase the within described property, the Mortgagee reserves the right to purchase the within described property at the amount bid by the second highest bidder. The foreclosure deed and the consideration paid by the successful bidder shall be held in escrow by DG&L, (hereinafter called the "Escrow Agent") until the deed shall be released from escrow to the successful bidder at the same time as the consideration is released to the Mortgagee, whereupon all obligations of the Escrow Agent shall be deemed to have been properly fulfilled and the Escrow Agent shall be discharged. Other terms, if any, to be announced at the sale.

U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 By its Attorney DOONAN, GRAVES & LONGORIA, LLC, 100 Cummings Center, Suite 303C, Beverly, MA 01915 (978) 921-2670 www.dgandl.com 4012.82 (SAMPSON) 2/23/2022, 3/02/2022, 3/09/2022



**DOONAN, GRAVES & LONGORIA, LLC**
ATTORNEYS AT LAW

*Serving Massachusetts, Maine*
*& New Hampshire*
*Hours: Monday - Friday 9 am - 4 pm*
*www.dgandl.com*

*100 Cummings Center, Suite 303C*
*Beverly, Massachusetts 01915*
*TEL: (978) 921-2670*
*FAX: (978) 921-4870*

## NOTICE OF INTENT TO FORECLOSE MORTGAGE

February 24, 2022

Town of Duxbury
Collector/Treasurer
878 Tremont Street
Duxbury, MA 02332

VIA CERTIFIED MAIL

Re:    85 Heritage Lane, Duxbury, MA 02332

To Whom It May Concern:

You are hereby notified, pursuant to Massachusetts General Laws, Chapter 244, §14, of the intention of U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4, on or after March 23, 2022 at 12:00 PM, to foreclose by sale, under the power of sale for breach of conditions, the mortgage given by Francis J. Sampson, Jr. to Washington Mutual Bank, F.A. dated March 26, 2007 and recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304.

Very truly yours,
U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4
by its attorneys
Doonan, Graves & Longoria, LLC

by: _____
Reneau J. Longoria, Esq.
Brian C. Linehan, Esq.

4012.82
*Refer to the Auctioneer's Website:  http://www.monroeauctiongroup.com*
*Enclosures:  Notice of Mortgagee's Sale*

## NOTICE OF MORTGAGEE'S SALE OF REAL ESTATE

By virtue and in execution of the Power of Sale contained in a certain mortgage given by **Francis J. Sampson, Jr.** to Washington Mutual Bank, FA dated March 26, 2007, recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304; said mortgage was then assigned to Bank of America, National Association as successor by merger to Lasalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 200-OA4 Trust by virtue of an assignment dated May 14, 2010, and recorded in Book 38565, Page 100; and further assigned to U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 by virtue of an assignment dated September 26, 2019, and recorded in Book 51857, Page 330; of which mortgage the undersigned is the present holder for breach of conditions of said mortgage and for the purpose of foreclosing the same will be sold at PUBLIC AUCTION at 12:00 PM on **March 23, 2022**, on the mortgaged premises. This property has the address of 85 Heritage Lane, Duxbury, MA 02332. The entire mortgaged premises, all and singular, the premises as described in said mortgage:

> The land in Duxbury, Plymouth County, Massachusetts, on Heritage Lane (a way off the westerly side of Tremont Street) being shown as Lot 5 on a plan entitled, "Subdivision Plan of Land In Duxbury, Mass., Belonging to Catherine Realty Trust", dated June 20, 1969, by Delano & Keith, Inc., recorded with Plymouth Registry of Deeds as Plan No. 209 of 1971, Plan Book 15, Page 964, reference to which plan is more particular description of said lot. Being the same premises conveyed to this mortgagor by deed of Francis J. Sampson, Jr., Trustee of J and G Realty Trust dated May 23, 2003 recorded with the Plymouth County Registry of Deeds in Book 25297, Page 236.

Subject to and with the benefit of easements, reservation, restrictions, and taking of record, if any, insofar as the same are now in force and applicable. In the event of any typographical error set forth herein in the legal description of the premises, the description as set forth and contained in the mortgage shall control by reference. Together with all the improvements now or hereafter erected on the property and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this sale.

**Terms of Sale:** Said premises will be sold subject to any and all unpaid taxes and assessments, tax sales, tax titles and other municipal liens and water or sewer liens and State or County transfer fees, if any there are, and TEN THOUSAND DOLLARS ($10,000.00) in cashier's or certified check will be required to be paid by the purchaser at the time and place of the sale as a deposit and the balance in cashier's or certified check will be due in thirty (30) days, at the offices of Doonan, Graves & Longoria, LLC ("DG&L"), time being of the essence. The Mortgagee reserves the right to postpone the sale to a later date by public proclamation at the time and date appointed for the sale and to further postpone at any adjourned sale-date by public proclamation at the time and date appointed for the adjourned sale date. The premises is to be sold subject to and with the benefit of all easements, restrictions, leases, tenancies, and rights of possession, building and zoning laws, encumbrances, condominium liens, if any and all other claim in the nature of liens, if any there be.

In the event that the successful bidder at the foreclosure sale shall default in purchasing the within described property according to the terms of this Notice of Sale and/or the terms of the Memorandum of Sale executed at the time of foreclosure, the Mortgagee reserves the right to sell the property by foreclosure deed to the second highest bidder, providing that said second highest bidder shall deposit with the Mortgagee's attorneys, the amount of the required deposit as set forth herein. If the second highest bidder declines to purchase the within described property, the Mortgagee reserves the right to purchase the within described property at the amount bid by the second highest bidder. The foreclosure deed and the consideration paid by the successful bidder shall be held in escrow by DG&L, (hereinafter called the "Escrow Agent") until the deed shall be released from escrow to the successful bidder at the same time as the consideration is released to the Mortgagee, whereupon all obligations of the Escrow Agent shall be deemed to have been properly fulfilled and the Escrow Agent shall be discharged. Other terms, if any, to be announced at the sale.

U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 By its Attorney DOONAN, GRAVES & LONGORIA, LLC, 100 Cummings Center, Suite 303C, Beverly, MA 01915 (978) 921-2670 www.dgandl.com 4012.82 (SAMPSON) 2/23/2022, 3/02/2022, 3/09/2022



DOONAN, GRAVES & LONGORIA, LLC
ATTORNEYS AT LAW

*Serving Massachusetts, Maine*
*& New Hampshire*
*Hours: Monday - Friday 9 am - 4 pm*
*www.dgandl.com*

*100 Cummings Center, Suite 303C*
*Beverly, Massachusetts 01915*
*TEL: (978) 921-2670*
*FAX: (978) 921-4870*

## NOTICE OF INTENT TO FORECLOSE MORTGAGE

February 24, 2022

Washington Mutual Bank, FA
2273 North Green Walley Parkway
Suite 14
Henderson, NV 89014

VIA CERTIFIED MAIL

Re:     85 Heritage Lane, Duxbury, MA 02332

To Whom It May Concern:

You are hereby notified, pursuant to Massachusetts General Laws, Chapter 244, §14, of the intention of U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4, on or after March 23, 2022 at 12:00 PM, to foreclose by sale, under the power of sale for breach of conditions, the mortgage given by Francis J. Sampson, Jr. to Washington Mutual Bank, F.A. dated March 26, 2007 and recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304.

Very truly yours,
U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4
by its attorneys
Doonan, Graves & Longoria, LLC

by: _____
Reneau J. Longoria, Esq.
Brian C. Linehan, Esq.

4012.82
*Refer to the Auctioneer's Website:  http://www.monroeauctiongroup.com*
*Enclosures:  Notice of Mortgagee's Sale*

## NOTICE OF MORTGAGEE'S SALE OF REAL ESTATE

By virtue and in execution of the Power of Sale contained in a certain mortgage given by **Francis J. Sampson, Jr.** to Washington Mutual Bank, FA dated March 26, 2007, recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304; said mortgage was then assigned to Bank of America, National Association as successor by merger to Lasalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 200-OA4 Trust by virtue of an assignment dated May 14, 2010, and recorded in Book 38565, Page 100; and further assigned to U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 by virtue of an assignment dated September 26, 2019, and recorded in Book 51857, Page 330; of which mortgage the undersigned is the present holder for breach of conditions of said mortgage and for the purpose of foreclosing the same will be sold at PUBLIC AUCTION at 12:00 PM on **March 23, 2022**, on the mortgaged premises. This property has the address of 85 Heritage Lane, Duxbury, MA 02332. The entire mortgaged premises, all and singular, the premises as described in said mortgage:

> The land in Duxbury, Plymouth County, Massachusetts, on Heritage Lane (a way off the westerly side of Tremont Street) being shown as Lot 5 on a plan entitled, "Subdivision Plan of Land In Duxbury, Mass., Belonging to Catherine Realty Trust", dated June 20, 1969, by Delano & Keith, Inc., recorded with Plymouth Registry of Deeds as Plan No. 209 of 1971, Plan Book 15, Page 964, reference to which plan is more particular description of said lot. Being the same premises conveyed to this mortgagor by deed of Francis J. Sampson, Jr., Trustee of J and G Realty Trust dated May 23, 2003 recorded with the Plymouth County Registry of Deeds in Book 25297, Page 236.

Subject to and with the benefit of easements, reservation, restrictions, and taking of record, if any, insofar as the same are now in force and applicable. In the event of any typographical error set forth herein in the legal description of the premises, the description as set forth and contained in the mortgage shall control by reference. Together with all the improvements now or hereafter erected on the property and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this sale.

**Terms of Sale:** Said premises will be sold subject to any and all unpaid taxes and assessments, tax sales, tax titles and other municipal liens and water or sewer liens and State or County transfer fees, if any there are, and TEN THOUSAND DOLLARS ($10,000.00) in cashier's or certified check will be required to be paid by the purchaser at the time and place of the sale as a deposit and the balance in cashier's or certified check will be due in thirty (30) days, at the offices of Doonan, Graves & Longoria, LLC ("DG&L"), time being of the essence. The Mortgagee reserves the right to postpone the sale to a later date by public proclamation at the time and date appointed for the sale and to further postpone at any adjourned sale-date by public proclamation at the time and date appointed for the adjourned sale date. The premises is to be sold subject to and with the benefit of all easements, restrictions, leases, tenancies, and rights of possession, building and zoning laws, encumbrances, condominium liens, if any and all other claim in the nature of liens, if any there be.

107

In the event that the successful bidder at the foreclosure sale shall default in purchasing the within described property according to the terms of this Notice of Sale and/or the terms of the Memorandum of Sale executed at the time of foreclosure, the Mortgagee reserves the right to sell the property by foreclosure deed to the second highest bidder, providing that said second highest bidder shall deposit with the Mortgagee's attorneys, the amount of the required deposit as set forth herein. If the second highest bidder declines to purchase the within described property, the Mortgagee reserves the right to purchase the within described property at the amount bid by the second highest bidder. The foreclosure deed and the consideration paid by the successful bidder shall be held in escrow by DG&L, (hereinafter called the "Escrow Agent") until the deed shall be released from escrow to the successful bidder at the same time as the consideration is released to the Mortgagee, whereupon all obligations of the Escrow Agent shall be deemed to have been properly fulfilled and the Escrow Agent shall be discharged. Other terms, if any, to be announced at the sale.

U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 By its Attorney DOONAN, GRAVES & LONGORIA, LLC, 100 Cummings Center, Suite 303C, Beverly, MA 01915 (978) 921-2670 www.dgandl.com 4012.82 (SAMPSON) 2/23/2022, 3/02/2022, 3/09/2022

## POSTPONEMENT
## AFFIDAVIT OF AUCTIONEER

Client:                Select Portfolio Servicing, Inc.

Borrower:          Francis J. Sampson, Jr.

Property Address:   85 Heritage Lane, Duxbury, MA 02332

I, Sandra Monroe, of Monroe Auction Group, being duly sworn, depose, and state as follows:

I, Sandra Monroe, am the keeper of records for Monroe Auction Group and have personal knowledge of the facts and circumstances set forth herein. Monroe Auction Group has postponed the Auction by Public Proclamation, on the premises of the property located at 85 Heritage Lane, Duxbury, MA 02332 that was scheduled for March 23, 2022 at 12:00PM to April 26, 2022 at 10:00AM.

Monroe Auction Group has complied with all applicable state and federal laws in performing this postponement.

Sworn to under the penalties of perjury this _____23_____ day of ___MARCH___, 2022

Monroe Auction Group

By: Sandra Monroe

Its: _Sandra Monroe_

COMMONWEALTH OF MASSACHUSETTS

_Essex_, ss

On this __23__ day of ___MARCH___, 2022 before me, the undersigned notary public, personally appeared ___Sandra Monroe___, proved to me through satisfactory evidence of identification which was her driver's license to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same voluntarily in her authorized capacity for its stated purpose.

___Nay Fri___

Name                              Notary Public

My Commission expires:

NANCY FRENI
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
September 21, 2023



EXHIBIT
**K**
109

## POSTPONEMENT
## AFFIDAVIT OF AUCTIONEER

Client:              Select Portfolio Servicing, Inc.

Borrower:            Francis J. Sampson, Jr.

Property Address:    85 Heritage Lane, Duxbury, MA 02332

I, Sandra Monroe, of Monroe Auction Group, being duly sworn, depose, and state as follows:

I, Sandra Monroe, am the keeper of records for Monroe Auction Group and have personal knowledge of the facts and circumstances set forth herein. Monroe Auction Group has postponed the Auction by Public Proclamation, on the premises of the property located at 85 Heritage Lane, Duxbury, MA 02332 that was scheduled for April 26, 2022 at 10:00AM to June 2, 2022 at 11:00AM

Monroe Auction Group has complied with all applicable state and federal laws in performing this postponement.

Sworn to under the penalties of perjury this ___26___ day of _April_ , 2022

Monroe Auction Group

By: Sandra Monroe

Its: _Sandra Monroe_

### COMMONWEALTH OF MASSACHUSETTS

_ESSEX_ , ss

On this ___26___ day of _April_ , 2022 before me, the undersigned notary public, personally appeared _Sandra Monroe_ , proved to me through satisfactory evidence of identification which was her driver's license to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same voluntarily in her authorized capacity for its stated purpose.

_Nay Freni_
Name                    Notary Public

My Commission expires:

NANCY FRENI
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
September 21, 2023


EXHIBIT
110

**POSTPONEMENT**

**AFFIDAVIT OF AUCTIONEER**

Client:                Select Portfolio Servicing, Inc.

Borrower:          Francis J. Sampson, Jr.

Property Address:   85 Heritage Lane, Duxbury, MA 02332

I, Sandra Monroe, of Monroe Auction Group, being duly sworn, depose, and state as follows:

I, Sandra Monroe, am the keeper of records for Monroe Auction Group and have personal knowledge of the facts and circumstances set forth herein. Monroe Auction Group has postponed the Auction by Public Proclamation, on the premises of the property located at 85 Heritage Lane, Duxbury, MA 02332 that was scheduled for June 2, 2022 at 11 AM to July 14, 2022 at 11 AM.

Monroe Auction Group has complied with all applicable state and federal laws in performing this postponement.

Sworn to under the penalties of perjury this _____2_____ day of _____June_____, 2022

                                   Monroe Auction Group

                                   By: Sandra Monroe

                                   Its: _Sandra F Monroe_

COMMONWEALTH OF MASSACHUSETTS

_Essex_, ss

On this _2_ day of _June_, 2022 before me, the undersigned notary public, personally appeared _____Sandra Monroe_____, proved to me through satisfactory evidence of identification which was her driver's license to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same voluntarily in her authorized capacity for its stated purpose.

_Nancy Freni_

Name                              Notary Public

My Commission expires:

NANCY FRENI
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
September 21, 2023

NANCY FRENI
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
September 21, 2023

**EXHIBIT**

**M**

111

*** Electronic Recording ***
Bk: 57556 Pg: 323 Page: 1 of 6
Recorded: 12/29/2022 01:21 PM
ATTEST: John R. Buckley, Jr. Register
Plymouth County Registry of Deeds

************************************************

MASSACHUSETTS EXCISE TAX
Plymouth District ROD #11 001
Date: 12/29/2022 01:21 PM
Ctrl# 162609 11785
Fee: $3,556.80 Cons: $780,000.00
************************************************

### FORECLOSURE DEED

U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 having its usual place of business at c/o Select Portfolio Servicing, Inc., 3217 S. Decker Lake Drive, Salt Lake City, UT 84119, the present holder of a mortgage from Francis J. Sampson, Jr. to Washington Mutual Bank, F.A. dated March 26, 2007 and recorded with the Plymouth County Registry of Deeds in Book 34311, Page 304, assigned to Bank of America, National Association as successor by merger to Lasalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 2007-OA4 Trust by virtue of an assignment dated May 14, 2010, and recorded in Book 38565, Page 100, assigned to U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 by virtue of an assignment dated September 26, 2019, and recorded in Book 51857, Page 330, by the power conferred by said mortgage and every other power, for Seven Hundred Eighty Thousand and 00/100 Dollars ($780,000.00) paid, grants to:

U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4, 3217 S. Decker Lake Drive, Salt Lake City, UT 84119 the premises conveyed by said mortgage.

WITNESS the execution of said corporation on this 26 day of October, 2022

See Limited Power of Attorney

Recorded Book 49326, Page 308 with

Plymouth County Registry of Deeds

U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4, by Select Portfolio Servicing, Inc., as its attorney-in-fact

By: _____

Name: _____ Cynthia May _____

*Personally Known

Title: _____ Document Control Officer _____
Select Portfolio Servicing, Inc.
Date: 10.26.2022

STATE OF UTAH                    )
COUNTY OF SALT LAKE              )

On this 26 day of October, 2022, before me, the undersigned notary public,

Cynthia May                     personally appeared, proved to me through satisfactory evidence of

identification, which were _____, to be the person whose name is signed on the

preceding or attached document, and acknowledged that he/she signed it voluntarily for its stated purpose, and

as Document Control Officer               for Select Portfolio Servicing, Inc., as the voluntary act of Select

Portfolio Servicing, Inc.

Notary Public

Property Address: 85 Heritage Lane, Duxbury, MA 02332



AUBRIE BELNAP
Notary Public State of Utah
My Commission Expires on:
February 23, 2025
Comm. Number: 716904



EXHIBIT

N

112

## SCHEDULE A

The land in Duxbury, Plymouth County, Massachusetts, on Heritage Lane (a way off the westerly side of Tremont Street) being shown as Lot 5 on a plan entitled, "Subdivision Plan of Land In Duxbury, Mass., Belonging to Catherine Realty Trust", dated June 20, 1969, by Delano & Keith, Inc., recorded with Plymouth Registry of Deeds as Plan No. 209 of 1971, Plan Book 15, Page 964, reference to which plan is more particular description of said lot. Being the same premises conveyed to this mortgagor by deed of Francis J. Sampson, Jr., Trustee of J and G Realty Trust dated May 23, 2003 recorded with the Plymouth County Registry of Deeds in Book 25297, Page 236.

## AFFIDAVIT

I, Reneau J. Longoria, Managing Member of Doonan, Graves & Longoria, LLC as Attorneys for U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4, named in the foregoing deed, make oath and say that, the principal, interest, and tax obligations mentioned in the mortgage as more particularly described in the Foreclosure Deed recorded herewith were not paid or tendered or performed when due or prior to the sale. In compliance with G.L. c. 244 § 14; on behalf of U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4, our office caused a notice of sale to be published in the Duxbury Clipper, a newspaper published, or by its title page purporting to be published in Duxbury, Plymouth County, Massachusetts for three (3) consecutive weeks: February 23, 2022, March 2, 2022, and March 9, 2022, notice of which the following is a true copy:

### SEE EXHIBIT "A" ATTACHED HERETO AND MADE PART HEREOF

Our office has also complied with Chapter 244, § 14 of the General Laws of Massachusetts and all amendments thereto, and 26 U.S.C. § 7425(c) of the Internal Revenue Code (if applicable) by mailing the required notices via certified mail to the owner of the equity of redemption appearing on our records as of thirty (30) days prior to the sale, to the last known address of said owner of the equity of redemption, and all other persons of record holding an interest in the property junior to the mortgage being foreclosed, return receipt requested, as well as regular mail, thereby complying in all respects with the power of sale.

Pursuant to said notice, on March 23, 2022, at 12:00 PM, said auction was postponed by public proclamation to April 26, 2022 at 10 AM at which time said auction was postponed by public proclamation to June 2, 2022 at 11:00 AM at which time said auction was postponed by public publication to July 14, 2022 at 11:00 AM

Pursuant to said notice, on July 14, 2022, at 11:00 AM, at which time and place upon the mortgaged premises, U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4, sold the mortgaged premises at public auction by Sandra Monroe of Monroe Auction Group, a licensed auctioneer, to U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4, for Seven Hundred Eighty Thousand and 00/100 ($780,000.00) Dollars, being the highest bid made therefore at said auction.

U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4, by their Attorneys Doonan, Graves & Longoria, LLC

by:

Reneau J. Longoria, Managing Member

COMMONWEALTH OF MASSCHUSETTS

Essex, ss.

On this ___29th___ day of ___December___, 2022, before me, the undersigned notary public, personally appeared ___Reneau J. Longoria___ who proved to me through satisfactory evidence of identification, which was personal knowledge, to be the person whose name is signed on the preceding or attached document, who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his/her knowledge and belief.

_____(Affix Seal)
Notary signature
My Commission Expires ___9|14|2029___

| ORDER OF INFORMAL PROBATE OF WILL AND/OR APPOINTMENT OF PERSONAL REPRESENTATIVE | Docket No. PL22P2585EA | Commonwealth of Massachusetts The Trial Court Probate and Family Court |
|---|---|---|

**Estate of:**

FRANCIS      JOSEPH      SAMPSON, JR.
First Name    Middle Name    Last Name

**Plymouth**                    **Division**

**Also Known As:**  FRANK SAMPSON AND  FRANCIS J. SAMPSON, JR.

**Date of Death:**  11/4/2022

1. A Petition has been filed requesting:

   ☒ The appointment of a Personal Representative.

   ☒ Informal probate of the will dated ___3/8/2006___ and codicils _____
   (date)                                                              (dates)
   of the above named Decedent.

2. Upon consideration of the Petition, I determine based upon the Petition that all of the following are true:

   a. The Petitioner is an interested person and has filed a complete and verified Petition.

   b. Venue is proper.

   c. The Petition was filed within the time period permitted by law.

   d. Any required notices have been given or waived.

   e. A death certificate issued by a public officer is in the Court's possession.

   f. The spouse, heirs at law and any devisees are not incapacitated or protected persons or minors; or if they are, they are represented by a conservator or a guardian who is not the Petitioner.

### INFORMAL PROBATE OF WILL

3. ☒ The original, properly executed and apparently unrevoked will is in the court's possession.

   The will dated ___3/8/2006___ and any codicils dated _____
   (date)                                                    (dates)

   are referred to as the will. There are no known prior wills which have not been expressly revoked by a later instrument. The will is admitted to informal probate.

   ☐ An authenticated copy of the will and any codicil and documents establishing probate in the State of

   _____ are in the court's possession and are offered for informal probate. The will is

   admitted to informal probate.

   ☐ A duly authenticated copy of the will and a duly authenticated certificate of its legal custodian that the copy filed is a

   true copy and that the will has become operative under the law of _____ is offered for

   informal probate. The will is admitted to informal probate.

### APPOINTMENT OF PERSONAL REPRESENTATIVE

4. ☒ The person whose appointment is sought has priority for appointment, with or without appropriate nomination and/or renunciation. Any will to which the requested appointment relates has been formally or informally probated.

**EXHIBIT**

**O**

116

**Estate of:** FRANCIS JOSEPH SAMPSON, JR.

First Name   Middle Name   Last Name

PL22P2585EA

The following person is appointed Personal Representative:

JAMES F SAMPSON

First Name   M.I.   Last Name                    First Name   M.I.   Last Name

35 STONYBROOK ROAD

(Address)   (Apt, Unit, No. etc.)              (Address)   (Apt, Unit, No. etc.)

MARSHFIELD   MA   02050

(City/Town)   (State)   (Zip)                   (City/Town)   (State)   (Zip)

**Primary Phone #:** 781-608-9945   **Primary Phone #:**

5.  The Personal Representative shall serve in an unsupervised administration:

☒ without surety on the bond.

☐ with ☐ personal ☐ corporate sureties on the bond in the penal sum amount of $ _____

6.  Letters of Authority shall issue.

The Personal Representative(s) shall comply with all relevant requirements under the law and the appointment is subject to termination as provided in G. L. c. 190B, §§ 3-608-612.

Date   11/17/22

☐ Justice            ☒ Magistrate

---

**The Petition is DENIED/DECLINED because:**

☐ This or another will of the Decedent has been the subject of a previous probate Order.

☐ Persons with prior or equal priority have not renounced or nominated the Petitioner or his or her nominee.

☐ Notice requirements have not been met.

☐ Other:

Date   _____

☐ Justice            ☐ Magistrate

**NOTE:** The denial of a Petition for Informal Probate cannot be appealed. A timely formal proceeding may be initiated pursuant to G. L. c. 190B, § 3-401.

If this Petition is allowed the Petitioner must publish an Informal Publication Notice (MPC 551) once in a newspaper designated by the Register. The Publication shall not be more than thirty (30) days after informal probate or appointment pursuant to G. L. c. 190B, § 3-306(b).

# LAST WILL AND TESTAMENT
## OF
### FRANCIS J. SAMPSON, JR.

I, FRANCIS J. SAMPSON, JR., of the Town of Duxbury, County of Plymouth, and Commonwealth of Massachusetts, being of sound and disposing mind, memory, and judgment, do hereby make, publish, and declare the following to be my Last Will and Testament, hereby revoking all Wills and Codicils heretofore made by me.

FIRST:    I direct that all my just debts, funeral expenses and expenses of administering my estate in all jurisdictions be paid as soon as practicable after my death, and to charge said expenses to the residue; excepting, however, such debts as are secured by mortgage on real estate to which I may hold title at the time of my death.

SECOND:    I hereby direct that all estate, succession, inheritance or other death taxes which shall become payable by reason of my death, whether in respect to property passing under this Will or otherwise, shall be paid by my Executor out of my estate in the same manner as an expense of administration without apportionment of any kind.

THIRD:    I give, devise and bequeath all of the rest, residue and remainder of the property which I may own at my death, real, personal and mixed, of whatever kind and wherever located in equal shares, share and share alike, to my children, JAMES SAMPSON, GRETCHEN SAMPSON, and JEFFREY SAMPSON, or to their issue, per stirpes, by right of representation.

FOURTH:    All securities, bank accounts, savings accounts, savings and loan accounts, certificates of deposit and other similar property which I own at the time of my death in the name of myself and/or any other individual, and which are, by their terms, payable on or after my death to such individual, shall be the sole property of such individual and my executor shall make no claim against him or her on account thereof.

FIFTH:    I nominate and appoint my Son, JAMES SAMPSON, to be Executor of this Will. If my Son, JAMES SAMPSON shall for any reason fail or cease to serve as Executrix, I appoint my Daughter, GRETCHEN SAMPSON, to serve in his stead. In the event that my Daughter, GRETCHEN SAMPSON, is unable or unwilling to serve, I appoint JEFFREY SAMPSON, to serve in her stead.
A. I request that the Executor nominated hereunder be appointed temporary Executor upon proper application therefore.
B. I direct that no bond shall be required of the Executor, or if bond is required by law, no surety on such bond shall be required.

SIXTH:    I authorize my Executor, without limitation by reason of enumeration and in addition to powers conferred by law, to: (1) sell, exchange, lease, mortgage, pledge or grant easements over or options with respect to any property, real or personal, to



EXHIBIT
P

determine the terms and manner of doing so, and to execute and deliver all appropriate instruments connected therewith; (2) retain any of the original investments or other property constituting my estate at the time of my death, regardless of the character of said investments or other property or whether they be such as are authorized by law for investment by fiduciaries, for such time as she shall deem advisable, and to dispose of any such property by sale, exchange or otherwise at such time as she shall deem advisable; (3) invest and reinvest in such stock, bonds, notes, mortgages or other property as she shall deem advisable even though they are not of the character expressly approved by law for investment by fiduciaries;

(4) charge the premiums on securities purchased at a premium either against principal or income (or apportion the same) or amortize the same; and credit to principal any discounts on securities purchased at less than par; (5) vote at corporate meetings in person or by proxy with or without power of substitution; (6) hold any and all securities or other property in the name of the duly appointed nominee, with or without disclosing the fiduciary relation; (7) make distribution of any cash bequest hereunder in cash or in kind or partly in cash and partly in kind, provided, however, that any assets transferred in kind to satisfy any gift under this Will shall be valued for that purpose at their fair market values determined as of the dates of their respective distribution; (8) make partial or complete distributions to estate beneficiaries, from time to time, during administration, provided that any distributions so made shall be charged against the ultimate share that they or their legal representatives receive under this Will; (9) exercise all tax related elections and options which she may have, in such manner as she will determine will achieve the overall minimum in total combined present and reasonably anticipated future taxes of all kinds, upon not only my estate, but also upon the beneficiaries hereunder, without making adjustments between income and principal or between the property interests passing to the various beneficiaries whose interests may be substantially affected as a result of the exercise of such elections or options; (10) employ accountants, attorneys and such agents as she may deem advisable and pay reasonable compensation for their services; (11) make distribution of any property bequeathed by this Will to a person under the age of majority, regardless of amount, to the custodian of any account established for such person under the Uniform Gift to Minors Act of any jurisdiction; (12) compromise or settle any and all claims or debts whatsoever against or in favor of my estate, without an order of court; and to do each and every act and thing necessary or proper to the full and complete administration of my estate.

SEVENTH: As used in this Will, the following definitions shall apply: (1) the word "Executor" shall include any successor or substitute fiduciary appointed by a court of competent jurisdiction to administer my estate; and (2) when the context so requires, the masculine gender shall include the feminine, the feminine the masculine, the singular shall include the plural, and the plural the singular.

I, the undersigned Testator, do hereby declare that I sign and execute this instrument, consisting of three (3) typewritten pages, as my Last Will, that I sign it willingly in the presence of each of said witnesses, and that I execute it as my free and voluntary act for the purposes herein expressed, at Duxbury, Plymouth County, Massachusetts, this Eighth day of March, 2006.



FRANCIS J. SAMPSON, JR

We, the undersigned witnesses, each do hereby declare in the presence of the aforesaid Testator that the Testator signed and executed this instrument as his last Will in the presence of each of us, that he signed it willingly, that each of us hereby signs this Will as witness in the presence of the Testator, and that to the best of our knowledge the Testator is eighteen (18) years of age or over, of sound mind and under no constraint or undue influence.

_Kathleen T Burgess_ residing at _19 Depot St Duxbury MA 02332_

_Janice Wolcott_ residing at _19 Depot St Duxbury MA 02332_

**IN WITNESS WHEREOF**, I hereunto set my hand and seal on this _8th_ day of _March_, 2005

FRANCIS J. SAMPSON, JR

## NOTARY ATTESTATION
## COMMONWEALTH OF MASSACHUSETTS

Plymouth, ss.

On this _8th_ day of _March_, 2006 before me, the undersigned notary public, personally appeared FRANCIS J. SAMPSON, JR, proved to me through satisfactory evidence of identification, which was a Massachusetts Driver's License, to be the persons whose name is signed on the preceding or attached documents, and acknowledged to me that she signed it voluntarily for its stated purpose.

Notary Public
My commission expires: _10/6/11_

120

*** Electronic Recording ***
Doc#:  00103018
**Bk: 57556 Pg: 329 Page: 1 of 4**
Recorded:  12/29/2022 01:21 PM
ATTEST: John R. Buckley, Jr. Register
Plymouth County Registry of Deeds

### Affidavit Regarding Note Secured By Mortgage Being Foreclosed
#### (*Eaton* and *Pinti* Combined Affidavit)

Property Address: 85 Heritage Lane, Duxbury, MA 02332

Mortgage: Francis J. Sampson, Jr. to Washington Mutual Bank, F.A., dated March 26, 2007, and recorded at the Plymouth County Registry of Deeds in Book 34311, Page 304

Assigned to: Bank of America, National Association as successor by merger to Lasalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 2007-OA4 Trust by virtue of an assignment dated May 14, 2010, and recorded in Book 38565, Page 100; U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 by virtue of an assignment dated September 26, 2019, and recorded in Book 51857, Page 330;

Foreclosing Mortgagee: U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4

Foreclosure Sale Date: July 14, 2022

The undersigned, _____**Cynthia May**_____ _ _____, having personal knowledge of the facts herein stated, under oath deposes and states as follows:

1. I am a ____Document Control Officer_____ of Select Portfolio Servicing, Inc. ("SPS"), attorney-in-fact and duly authorized agent for U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4, the Foreclosing Mortgagee.

2. As a mortgage servicer, SPS collects payments from borrowers and maintains up-to-date electronic records concerning the loans it services in its electronic record-keeping system. I have access to SPS's business records, including the business records for and relating to

1



the subject loan. I make this affidavit based upon my review of those records relating to the Borrower(s)'s loan and from my own personal knowledge of how the records are kept and maintained. The loan records are maintained by SPS in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with personal knowledge. It is the regular practice to keep such records in the ordinary course of a regularly conducted business activity.

3. To the extent that the business records of the loan in this matter were created by a prior servicer, the prior servicer's records for the loan were integrated and boarded into SPS's systems, such that the prior servicer's records concerning the loan are now part of SPS's business records. SPS maintains quality control and verification procedures as part of the boarding process to ensure the accuracy of the boarded records. It is the regular practice of SPS to integrate prior servicers' records into SPS's business records, and to rely upon the accuracy of those boarded records in providing its loan servicing functions. These prior servicer records are integrated and relied upon by SPS as part of SPS's business records.

4. Based upon my review of SPS's business records, I certify that as of the date when the Notices of Sale relating to the above-referenced mortgage were mailed and published and up to and including the foreclosure sale date, U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-OA4 was:
   [X] the holder of the promissory note secured by the above referenced mortgage;
   [  ] the authorized agent of the holder of the promissory note, secured by the above referenced mortgage.

5. Based upon my review of SPS's business records, I certify that prior to mailing the Notices of Sale:
   [X] The Notice(s) of Default to Mortgagor(s) were sent in strict compliance with the terms and conditions precedent in the mortgage to acceleration and sale. I further certify:
   a) The Notice(s) was mailed to the Mortgagor(s) on __10-16-18__ and specified the default.
   b) The Notice(s) specified the action required to cure the default.

2

122

c) The Notice(s) specified a date, not less than 30 days from the date of Notice being mailed to the Borrower, by which the default must be cured.

d) The Notice(s) informed the Mortgagor(s) that failure to cure the default on or before the date specified in the Notice may result in acceleration of the sums secured by the Mortgage and sale of the property secured by the Mortgage.

e) The Notice(s) informed the Mortgagor(s) of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or other defense to acceleration and sale.

f) The Notice(s) informed the Mortgagor(s) that if the default is not cured on or before the date specified in the notice, the Mortgagee at its option may require immediate payment in full of all sums secured by the Mortgage without further demand and may invoke the Statutory Power of Sale and any other remedies permitted by applicable law. The Notice further informed that the Mortgagee shall be entitled to collect all expenses incurred in pursuing the remedies provided above, including but not limited to reasonable attorneys' fees and costs of title evidence.

[   ] The Notice(s) of Default to Mortgagor(s) pursuant to the terms and conditions precedent in the mortgage to acceleration and sale was sent on or before July 17, 2015.

[   ] The mortgage contains no conditions precedent in the mortgage to acceleration and sale.

Signed under the pains and penalties of perjury this _10_ day of _October_, 2022.

See Limited Power of Attorney
Recorded at Book 49326, Page 308 with
Plymouth County Registry of Deeds

By: _____
Name: __Cynthia May__
Title: __Document Control Officer__
Select Portfolio Servicing, Inc.
Date: __10.26.2022__

3

123

STATE OF UTAH          )

COUNTY OF SALT LAKE  )                    *Personally Known

Subscribed before me on this _2e_ day of _october_._____, in the year 2022 by

  **Cynthia May** ✗_____, a ___Document Control Officer___ of Select

Portfolio Servicing, Inc., proved on the basis of satisfactory evidence to be the person whose

name is subscribed to this instrument and who swore or affirmed to me that the contents of the

document are truthful and accurate to the best of his/her knowledge and belief. Witness my hand

and official seal

_____

Notary Public  Aubrie Belnap

AUBRIE BELNAP
Notary Public  State of Utah
My Commission Expires on:
February 23, 2025
Comm. Number: 716904

4

124

| SURVIVING SPOUSE, CHILDREN, HEIRS AT LAW G. L. c. 190B, § 3-301 | Docket No. | Commonwealth of Massachusetts The Trial Court Probate and Family Court |
|---|---|---|
| ☒ Original Form          ☐ Amended Form | PL22P2585EA | |

**Estate of:**

FRANCIS    JOSEPH    SAMPSON, JR.    | Plymouth        **Division**
First Name    Middle Name    Last Name

**Date of Death:** 11/4/2022

**FORM USE:** This form must be used to identify a Decedent's surviving spouse, children and heirs at law. Heirs at law are persons entitled to receive the Decedent's property under the intestacy succession laws if there is no will. For dates of death on or after March 31, 2012, the Massachusetts Uniform Probate Code, G. L. c. 190B, § 2-101, et seq., should be consulted. For deaths prior to that date, see applicable law.

**Instructions:** Complete ALL applicable sections of this form. For step by step instructions on how to complete this form, click on the instructions link above or see Instructions MPC 958.

**ALL PETITIONERS MUST COMPLETE LINE 1 AND LINE 2.**

1. The Decedent ☐ did not leave a surviving spouse. ☒ left a **surviving** spouse:

| NAME OF SURVIVING SPOUSE | STREET ADDRESS, CITY/TOWN, STATE, ZIP |
|---|---|
| DORIS F ELDRIDGE-SAMPSON | 85 HERITAGE LANE, DUXBURY, MA 02332 |

2. a. The Decedent ☐ did not have children (*biological or adopted*). ☒ had the following children (*biological or adopted*):

| NAME OF DECEDENT'S CHILD | STREET ADDRESS | UNDER AGE 18? | | CHILD OF SURVIVING SPOUSE? |
|---|---|---|---|---|
| JAMES F SAMPSON | 35 STONYBROOK RD. MARSHFIELD MA 02050 | ☐ Yes | ☒ No | ☐ Yes |
| GRETCHEN REDINBAUGH | 21 HOLYOKE AVE. MARSHFIELD MA 02050 | ☐ Yes | ☒ No | ☐ Yes |
| JEFFREY F SAMPSON | 16 LEON ST. MARSHFIELD MA 02050 | ☐ Yes | ☒ No | ☐ Yes |

     ☒ b. The surviving spouse has surviving descendants (children, grandchildren, etc.) who are **not** descendants of the Decedent.

**Complete line 3 ONLY if the Decedent left children in line 2a who are also heirs at law.**

3. ☒ a. All of the children listed in 2a **survived** the Decedent.

     ☐ b. The following children listed in 2a died **before** the Decedent:

| NAME OF PREDECEASED CHILD | DATE OF DEATH |
|---|---|
| | |

   c. The predeceased child(ren) listed in 3b:

     ☐ did not leave surviving descendants (children, grandchildren, etc.) (*biological or adopted*).

     ☐ left the following surviving descendants (children, grandchildren, etc.) (*biological or adopted*):

NOV 15 2022

**EXHIBIT R**

| | | | ☐ Yes |
|---|---|---|---|
| | | | ☐ Yes |

**Complete line 4 ONLY if the Decedent left NO surviving descendants (children, grandchildren, etc.). Otherwise STOP and go to line 7 and line 8.**

4.   The Decedent  ☒  did not leave a surviving parent.  ☐  left a surviving parent or parents:

| SURVIVING PARENT(S) | |
|---|---|
| | |
| | |

**For deaths on or after March 31, 2012:**

**Complete line 5 ONLY if the Decedent left NO surviving spouse, descendants (children, grandchildren, etc.) or parents. Otherwise STOP and go to line 7 and line 8.**

**For deaths prior to March 31, 2012:**

**Complete line 5 ONLY if the Decedent left NO surviving descendants (children, grandchildren, etc.) or parents. Otherwise STOP and go to line 7 and line 8.**

5.   a.   The Decedent  ☐  did not leave a surviving sibling.  ☒  left the following surviving sibling(s) (*biological or adopted, whole or half-blood*):

| NAME OF SURVIVING SIBLING | ADDRESS (or date, if since deceased) | LAW OR |
|---|---|---|
| PAMELA SAMPSON | 43 KENDALL AVE. #101, SHERBORN MA 01770 | ☐ Yes |
| PAULA SAMPSON-BALLARD | 25 ARLINGTON ST., LYNNFIELD MA 01940 | ☐ Yes |

   b.   ☒  One or more of the Decedent's siblings died **before** the Decedent and left surviving descendants (*biological or adopted*):

| SURVIVING DESCENDANT IF PREDECEASED SIBLING | ADDRESS | RELATIONSHIP TO DECEDENT | OR |
|---|---|---|---|
| PATRICIA | | | ☐ Yes |

**For deaths on or after March 31, 2012:**

**Complete line 6 ONLY if the Decedent left NO surviving spouse, descendants (children, grandchildren, etc.), parents, siblings or descendants of any predeceased sibling. Otherwise STOP and go to line 7 and line 8.**

**For deaths prior to March 31, 2012:**

**Complete line 6 ONLY if the Decedent left NO surviving descendants (children, grandchildren, etc.), parents, siblings or descendants of any predeceased sibling. Otherwise STOP and go to line 7 and line 8.**

6.   List the heirs as defined by the law in effect on the Decedent's date of death. (*Select one*):

   ☐  The heirs at law are as follows:

   *For assistance, see the Instructions and the Massachusetts Degree of Kinship Chart (MPC 960). See also line 7 and line 8.*

126

| | | | ☐ Yes |
|---|---|---|---|
| | | | ☐ Yes |

☐ After a reasonable diligent search, the heirs at law are unknown or unascertainable. (*Requires a* **formal** *proceeding.*)

**ALL PETITIONERS MUST COMPLETE LINE 7 AND LINE 8, if applicable.**

7.  **NONE** of the Decedent's **heirs at law** (surviving spouse, children, etc.) are under a legal disability except for:

| | | | |
|---|---|---|---|
| | ☐ Minor    List age: _____ <br> ☐ Incapacitated or protected person <br> *(adjudicated or alleged)* | ☐ Guardian <br> ☐ Conservator <br> ☐ Unrepresented* | |
| | ☐ Minor    List age: _____ <br> ☐ Incapacitated or protected person <br> *(adjudicated or alleged)* | ☐ Guardian <br> ☐ Conservator <br> ☐ Unrepresented* | |

8.  **NONE** of the **heirs at law** (surviving spouse, children, etc.) who survived the Decedent are deceased **at the time of this filing** except for:

| | | | |
|---|---|---|---|
| | | ☐ Personal Representative <br> *(**Required** for an informal proceeding)* <br> ☐ Unrepresented <br> *(**Formal** proceeding required)* | |
| | | ☐ Personal Representative <br> *(**Required** for an informal proceeding)* <br> ☐ Unrepresented <br> *(**Formal** proceeding required)* | |

# SIGNED UNDER THE PENALTIES OF PERJURY

I certify under the penalties of perjury that the foregoing statements are true to the best of my knowledge and belief.

Date: 11/14/2022

Signature of Petitioner

JAMES F SAMPSON
(Print name)

127

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————X

**FRANCIS J. SAMPSON, JR.,**
        **Plaintiff,**

v.                                                              **CIVIL ACTION NO. 22-CV-10447-NMG**

**U.S. BANK NATIONAL ASSOCIATION AS
TRUSTEE, SUCCESSOR IN INTEREST TO
BANK OF AMERICA N.A., SUCESSOR IN
INTEREST BY MERGER TO LASALLE
BANK, N.A. AS TRUSTEE FOR WAMU PASS
THROUGH CERTIFICATES, SERIES 2007-
OA4; SELECT PORTFOLIO SERVICING,
INC.; AND JPMORGAN CHASE BANK, N.A.,**
        **Defendants,**

v.

**JAMES F. SAMPSON, HEIR AND PERSONAL
REPRESENTATIVE OF THE ESTATE OF
FRANCIS J. SAMPSON, JR.; GRETCHEN
SAMPSON, HEIR TO THE ESTATE OF
FRANCIS J. SAMPSON, JR.; JEFFERY
SAMPSON, HEIR TO THE ESTATE OF
FRANCIS J. SAMPSON, JR.; and DORIS F.
ELDRIDGE-SAMPSON, HEIR TO THE
ESTATE OF FRANCIS J. SAMPSON, JR.,**
        **Defendants-in-Counterclaim.**

———————————————————————X

## AFFIDAVIT OF SELECT PORTFOLIO SERVICING, INC.

I, Daniel Maynes, being duly sworn, depose and state as follows:

1.      I am a Document Control Officer of Select Portfolio Servicing, Inc. ("SPS"), the
authorized servicer acting on behalf of U.S. Bank National Association as Trustee,
Successor in Interest to Bank of America, N.A., Successor in Interest by Merger to
LaSalle Bank, N.A. as Trustee for WAMU Pass Through Certificates, Series 2007-OA4
("U.S. Bank"), and have served in that capacity since __10|1|2012__ .

**EXHIBIT
S**

128

2.    I submit this Affidavit in support of the Defendants' Motion for Summary Judgment.

3.    I make this affidavit based upon my personal knowledge and, further, upon my review of the business records for the subject mortgage loan and the property located at 85 Heritage Lane, Duxbury, MA (the "Property"), which records were made and maintained in the regular or ordinary course of SPS's business as the authorized servicer acting on behalf of U.S. Bank, at or near the time of the act, condition or event to which they relate, by persons employed by the Plaintiff who had a business duty to accurately and completely take, make and maintain such records and documents. They are: (a) made in good faith; (b) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (c) kept in the course of SPS's regularly conducted business activities; and (d) it is the regular practice of SPS to make and keep such records.

4.    To the extent the business records of the loan in this matter were created by a prior servicer, the prior servicer's records for the loan were integrated and boarded into SPS's systems, such that the prior servicer's records concerning the loan are now part of SPS's business records. SPS conducts quality control and verification of the information received from the prior servicer as part of the boarding process to ensure the accuracy of the boarded records. It is the regular practice of SPS to integrate prior servicer's records into SPS's business records and to rely upon the accuracy pf those boarded records in providing its loan servicing functions. These prior servicer records are integrated and relied upon by SPS as part of SPS's business records.

5.    If I were called upon to testify, I could and would testify competently to the facts set forth

herein and I am authorized to submit this Affidavit on behalf of SPS.

6.  On March 26, 2007, Francis J. Sampson, Jr. ("Mortgagor") executed and delivered a promissory note in favor of Washington Mutual Bank, FA ("WAMU") in the amount of $960,000.00 ("Sampson Note").[1]

7.  The Sampson Note is endorsed in blank.[2]

8.  U.S. Bank is the holder/owner of the Sampson Note.

9.  As security for the debt evidenced by the Sampson Note, the Mortgagor gave a Mortgage on the property located at 85 Heritage Lane, Duxbury, MA (the "Property") to WAMU, dated March 26, 2007, and recorded with the Plymouth County Registry of Deeds in Book 34311, Page 304 ("Sampson Mortgage").[3]

10. The Mortgagor defaulted under the terms of the Sampson Mortgage Loan Contract as a result of his failure to make the January 1, 2010, payment and all subsequent payments due thereunder.

11. The Sampson Mortgage was assigned to Bank of America, National Association as successor by merger to LaSalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 2007-OA4 Trust by virtue of an Assignment of Mortgage dated May 14, 2010, and recorded with the Plymouth County Registry of Deeds in Book 38565, Page 100 ("BOA Assignment").[4]

12. The BOA Assignment is affected by a Confirmatory Assignment of Mortgage dated April 25, 2013, and recorded with the Plymouth County Registry of Deeds in Book 43086,

---

[1] *See* Appendix of Exhibits (Appx.), Exhibit A (a true and correct copy of the Sampson Note is attached thereto and incorporated herein)

[2] *See* Appx., Exhibit A at p. 6.

[3] *See* Appx., Exhibit B (a true and correct copy of the Sampson Mortgage is attached thereto and incorporated herein).

[4] *See* Appx., Exhibit C (a true and correct copy of the BOA Assignment is attached thereto and incorporated herein).

Page 192, which attempts to clarify that the assignee identified in the BOA Assignment is U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, successor by merger to Lasalle Bank NA as trustee for WAMU Mortgage Pass-Through Certificates Series 2007-OA4 Trust ("Confirmatory Assignment").[5]

13.    As a result of his default, on October 16, 2018, SPS, the authorized servicer of the Sampson Mortgage Loan, sent the Mortgagor a 90-day Notice of Right to Cure Your Mortgage Default and a Notice of Right to Request a Modified Mortgage Loan pursuant to G.L. c. 244, §§ 35A & 35B, as well as the applicable terms of the Sampson Mortgage Loan Contract.[6]

14.    The Mortgagor failed to cure his default on or before the January 17, 2019, deadline set forth in the Notice of Right to Cure.

15.    To avoid any question as to the validity and effect of the Confirmatory Assignment,[7] On September 26, 2019, Bank of America, National Association as successor by merger to LaSalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 2007-OA4 Trust executed and delivered an Assignment of the Sampson Mortgage to U.S. Bank, which was recorded with the Plymouth County registry of Deeds in Book 51857, Page 330 ("U.S. Bank Assignment").[8]

16.    On November 2, 2021, SPS executed a Certification Pursuant to 209 CMR 18.21A(2)(c)

---

[5] *See* Appx., Exhibit D (a true and correct copy of the Confirmatory Assignment is attached thereto and incorporated herein).

[6] *See* Appx., Exhibit E (a true and correct copy of the 90-day Notice of Right to Cure and Notice of Right to Pursue a Modified Mortgage Loan is attached thereto and incorporated herein).

[7] The Confirmatory Assignment was executed by JPMorgan Chase Bank as the holder of the Sampson Mortgage, however, as a result of the prior BOA Assignment, JPMorgan Chase Bank may not have held the requisite interest in the Sampson Mortgage at the time of the Confirmatory Assignment.

[8] *See* Appx., Exhibit F (a true and correct copy of the U.S. Bank Assignment is attached thereto and incorporated herein).

indicating that U.S. Bank is the holder and owner of the Sampson Note ("Noteholder Certification").[9]

17.    On November 18, 2021, SPS caused an Affidavit Pursuant to M.G.L. Chapter 244 Sections 35B and 35C to be recorded with the Plymouth County Registry of Deeds in Book 56035, Page 183 ("Pre-Foreclosure Noteholder Affidavit").[10]

18.    A foreclosure sale of the Property was scheduled for March 23, 2022.

19.    Pursuant to G.L. c. 244, § 14, U.S. Bank caused to be published in The Duxbury Clipper a Notice of Mortgagee's Sale of Real Estate on February 23, 2022, March 2, 2022 and March 9, 2022.[11]

20.    Pursuant to G.L. c. 244, §§ 14 & 17B, on February 24, 2022, U.S. Bank caused the Plaintiff to be mailed a Notice of Intent to Foreclose Mortgage and Intent to Pursue Deficiency After Foreclosure, as well copies of the Notice of Sale and Noteholder Certification ("Section 14 & 17B Letters").[12]

21.    The foreclosure sale of the Property was postponed by public proclamation from March 23, 2022, to April 26, 2022, as a result of the Plaintiff's Complaint.[13]

22.    The foreclosure sale of the Property was further postponed by public proclamation from April 26, 2022, to June 2, 2022.[14]

23.    The foreclosure sale of the Property was further postponed by public proclamation from

---

[9] *See* Appx., Exhibit G (a true and correct copy of the Noteholder Certification is attached thereto and incorporated herein).

[10] *See* Appx., Exhibit H (a true and correct copy of the Pre-Foreclosure Noteholder Affidavit is attached thereto and incorporated herein).

[11] *See* Appx., Exhibit I (a true and correct copy of the Notice of Mortgagee's Sale Publication is attached thereto and incorporated herein).

[12] *See* Appx., Exhibit J (true and correct copies of the Section 14 & 17B Letters are attached thereto and incorporated herein).

[13] *See* Appx., Exhibit K (a true and correct copy of the Postponement Affidavit is attached thereto and incorporated herein).

[14] *See* Appx., Exhibit L (a true and correct copy of the Postponement Affidavit is attached thereto and incorporated herein).

June 2, 2022, to July 14, 2022.[15]

24.    On July 14, 2022, U.S. Bank conducted its lawful non-judicial foreclosure sale of the Property at which U.S. Bank was the successful bidder.[16]

25.    U.S. Bank purchased the Property at its foreclosure sale for $780,000.00.[17]

26.    The Foreclosure Deed conveying title to the Property to U.S. Bank was recorded on December 29, 2022, with the Plymouth County Registry of Deeds in Book 57556, Page 323.[18]

27.    On December 29, 2022, U.S. Bank caused to be recorded an Affidavit Regarding Note Secured by Mortgage Being Foreclosed with the Plymouth County Registry of Deeds in Book 27556, Page 329 ("Post-Foreclosure Noteholder Affidavit").[19]

28.    U.S. Bank was the mortgagee of record of the Sampson Mortgage prior to the publication of its Notice of Sale under G.L. c. 244, § 14, and at all times up to and including the July 14, 2022, foreclosure sale of the Property.[20]

29.    U.S. Bank was the holder/owner of the Sampson Note prior to the publication of its Notice of Sale under G.L. c. 244, § 14, and at all times up to and including the July 14, 2022, foreclosure sale of the Property.[21]

30.    Based upon the Schedule of Surviving Spouse, Children, Heirs at Law filed with the Plymouth County Probate and Family Court, Doris F. Eldrige-Sampson, the Mortgagor's

---

[15] *See* Appx., Exhibit M (a true and correct copy of the Postponement Affidavit is attached thereto and incorporated herein).

[16] *See* Appx., Exhibit N (a true and correct copy of the Foreclosure Deed and Affidavit of Sale is attached thereto and incorporated herein).

[17] *See* Appx., Exhibit N.

[18] *See* Appx., Exhibit N.

[19] *See* Appx., Exhibit Q (a true and correct copy of the Post-Foreclosure Noteholder Affidavit is attached thereto and incorporated herein).

[20] *See* Appx., Exhibits B, C, D, F, I and N.

[21] *See* Appx., Exhibits A, G, H, I, N and Q.

surviving spouse, continues to occupy the Property.[22]

31.    No tenancy relationship has ever existed between U.S. Bank and Doris F. Eldrige-Sampson.

Sworn to under the pains and penalties of perjury, on this ____ day of March, 2023.

Select Portfolio Servicing, Inc.

By: _____
        Daniel Maynes
Its:    Document Control Officer

State of  Utah
County of Salt Lake

On this $\underline{01}$ day of $\underline{March}$ , 2023, before me, _____**Cynthia May**_____ , personally appeared $\underline{Daniel\ Maynes}$ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**Document Control Off**

Witness my hand and official seal.

_____
Notary signature:

CYNTHIA MAY
Notary Public State of Utah
My Commission Expires on:
April 27, 2025
Comm. Number: 717379

---

[22] *See* Appx., Exhibit R (a true and correct copy of the Schedule of Surviving Spouse, Children Heirs at Law filed with the Plymouth County Probate and Family Court is attached thereto and incorporated herein).

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____X

FRANCIS J. SAMPSON, JR.,
    Plaintiff,

v.
                           CIVIL ACTION NO. 22-CV-10447-NMG

U.S. BANK NATIONAL ASSOCIATION AS
TRUSTEE, SUCCESSOR IN INTEREST TO
BANK OF AMERICA N.A., SUCESSOR IN
INTEREST BY MERGER TO LASALLE
BANK, N.A. AS TRUSTEE FOR WAMU PASS
THROUGH CERTIFICATES, SERIES 2007-
OA4; SELECT PORTFOLIO SERVICING,
INC.; AND JPMORGAN CHASE BANK, N.A.,
    Defendants,

v.

JAMES F. SAMPSON, HEIR AND PERSONAL
REPRESENTATIVE OF THE ESTATE OF
FRANCIS J. SAMPSON, JR.; GRETCHEN
SAMPSON, HEIR TO THE ESTATE OF
FRANCIS J. SAMPSON, JR.; JEFFERY
SAMPSON, HEIR TO THE ESTATE OF
FRANCIS J. SAMPSON, JR.; and DORIS F.
ELDRIDGE-SAMPSON, HEIR TO THE
ESTATE OF FRANCIS J. SAMPSON, JR.,
    Defendants-in-Counterclaim.

_____X

## AFFIDAVIT OF RENEAU J. LONGORIA, ESQ.

I, Reneau J. Longoria, Esq., being the Managing Member of the law firm of Doonan

Graves & Longoria, LLC, ("DGL"), attorneys of record for the Defendants, U.S. Bank National

Association as Trustee, Successor in Interest to Bank of America N.A., Successor in interest by

merger to LaSalle Bank, N.A. as Trustee for WAMU Pass Through Certificates, Series 2007-

OA4 ("U.S. Bank"), Select Portfolio Servicing, Inc. ("SPS") and JPMorgan Chase Bank, N.A.

("Chase"), in the above-entitled action, respectfully submit this Affidavit in support of the

U.S. Bank N.A., as Trustee v. Francis J. Sampson, Jr.
85 Heritage Lane, Duxbury, MA
DG&L File No.: 4012.82          1

EXHIBIT
**T**
135

Defendants' Motion for Summary Judgment and hereby avers that:

1.  I am an attorney admitted to practice in the Commonwealth of Massachusetts.

2.  I make this affidavit based upon my personal knowledge and, further, upon my review of the public records as well as the business records of DGL with respect to the servicing and foreclosure of the subject mortgage loan and the property located at 85 Heritage Lane, Duxbury, MA (the "Property"), which records were made and maintained in the regular or ordinary course of business of DGL at or near the time of the act, condition or event to which they relate, by persons employed by DGL who had a business duty to the Plaintiff to accurately and completely take, make and maintain such records and documents. They are: (a) made in good faith; (b) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (c) kept in the course of my firm's regularly conducted business activities; and (d) it is the regular practice of my firm to make and keep such records.

3.  I have reviewed and am familiar with all the documents relating to this action, including the Complaint filed Francis J. Sampson, Jr.

4.  On March 18, 2022, the Mortgagor commenced the instant action by filing his Complaint in the Plymouth Superior Court.[1]

5.  On March 24, 2022, the Defendants removed the matter to this Court.[2]

6.  On November 4, 2022, the Mortgagor passed away.[3]

7.  On November 17, 2022, the Plymouth Probate and Family Court entered an Order

---

[1] *See* ECF Doc No. 1-1.

[2] *See* ECF Doc No. 1.

[3] *See* Appendix of Exhibits ("Appx."), Exhibit O (a true and correct copy of the Order of Informal Probate is attached thereto and incorporated herein).

appointing James F. Sampson as the Personal Representative of the Mortgagor's Estate.[4]

8. Further, in his Last Will and Testament, the Mortgagor left the Property to James F. Sampson, Gretchen Sampson and Jeffrey Sampson.[5]

9. Additionally, based upon the Schedule of Surviving Spouse, Children, Heirs at Law filed with the Plymouth County Probate and Family Court, Doris F. Eldrige-Sampson, the Mortgagor's surviving spouse, continues to occupy the Property.[6]

Sworn to under the pains and penalties of perjury, on this the 24 day of February, 2023.

Reneau J. Longoria, Esq.
Doonan, Graves, and Longoria, LLC

Commonwealth of Massachusetts
County of Essex

On this 24th day of February, 2023, before me, the undersigned notary public, personally appeared Reneau J. Longoria, Esq., personally known to me (or proved to me on the basis of satisfactory evidence) to be the person who signed the preceding or attached document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of her knowledge or belief.

Witness my hand and official seal.



Notary signature
My commission expires:

DONNA M. SMALL
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
November 30, 2023

---

[4] See Appx., Exhibit O.
[5] See Appx., Exhibit P (a true and correct copy of the Last Will and Testament filed with the Plymouth County Probate and Family Court is attached thereto and incorporated herein).
[6] See Appx., Exhibit R (a true and correct copy of the Schedule of Surviving Spouse, Children Heirs at Law filed with the Plymouth County Probate and Family Court is attached thereto and incorporated herein).